The SALVATION ARMY, Plaintiff,

v.

UNITED STATES of America, Defendant.

United States District Court
S. D. New York.
March 6, 1956.

Cadwalader, Wickersham & Taft, New York City, for plaintiff. John A. Sullivan, New York City, of counsel.

Paul W. Williams, U. S. Atty., for Southern Dist. of New York, for defendant. George M. Vetter, Jr., Asst. U. S. Atty., New York City, of counsel.

DAWSON, District Judge.

This case, which was tried by the Court without a jury, raises the question as to whether certain items of jewelry and luggage sold by the Salvation Army to its officers and members were subject to the Federal excise tax on jewelry and luggage under the provisions of § 1651 and § 2400 of 26 U.S. Code (Internal Revenue Code 1939) [1].

The action is one for a refund of Federal excise taxes. It is a consolidated action resulting from the consolidation of two actions brought by the plaintiff in which the plaintiff seeks a refund of excise taxes paid by the plaintiff. The first action covers taxes collected for the period from October 1, 1941 through December 31, 1948, while the second action relates to the subsequent period from January 1, 1949 through March 31, 1949.

It has been stipulated that the total amount of the refund claim involved in this action is $8,134.40. It has been further stipulated that in the event the plaintiff should prevail in the action, the defendant is entitled to a set-off of $598.60 plus interest at 6% per annum from August 1, 1952; and in the event that the defendant should prevail, the defendant is entitled to an affirmative judgment for such amount. This set-off and/or counterclaim, as the case may be, results from the fact that after commencement of the first action, the defendant had made a refund to the plaintiff of certain monies which was excessive by $598.60 due to an error in calculations.

All of the tax paid was paid with respect to jewelry items with the exception of $36.93 which was paid with respect to items of luggage.

The Facts

There is no substantial dispute as to any of the following facts. The significant facts are as follows:

1. The plaintiff is a religious and charitable corporation organized pursuant to a special statute of incorporation of the New York State Legislature, L. 1899, c. 468. It is the temporal and legal organization in this country for the Salvation Army, which is an international religious organization. The Commissioner of Internal Revenue has ruled that the national headquarters of the Salvation Army and its various components throughout the United States constitute a church or a convention or association of churches as that term is used in the 1954 Revenue Code, 26 U.S.C.A. § 1 et seq.[2]

1. § 1651.
"(a) Tax. There is hereby imposed upon the following articles (including in each case fittings or accessories therefor sold on or in connection with the sale thereof) sold at retail a tax equivalent to 20 per centum of the price for which so sold:
"(1) * * * valises, * * * hat boxes for use by travelers * * *
"(2) * * *
"(3) Toilet cases and other cases, bags, and kits (without regard to size, shape, construction, or material from which

made) for use in carrying toilet articles or articles of wearing apparel."
§ 2400.
"There is hereby imposed upon the following articles sold at retail a tax equivalent to 10 per centum of the price for which so sold: All articles commonly or commercially known as jewelry, whether real or imitation; * * *. The tax imposed by this section shall not apply to any article used for religious purposes, * * *."

2. Letter of October 10, 1955.

2. The Salvation Army uses military terminology in connection with its organization and work. The lay members of the denomination are described as "soldiers". The ministers are described as "officers" with various ranks similar to that used in a military organization and with a "general" at the top of the hierarchy. The congregations are called "corps". The members sign articles of faith which are designated as "Articles of War". The denomination has regular religious services on Sundays as well as other days. The officers are recognized as ministers who are legally empowered to perform marriage services.

3. The Orders and Regulations for officers of the Salvation Army provide that: "The Officer must always appear in Regulation Uniform" and also that "Officers are strictly forbidden to wear wordly adornment or ornaments of any kind." The Regulations also state that: "This rule prohibits jewellery, including ear-rings, rings, lockets, gold or silver chains and other ornaments; also articles, such as brooches, made of fancy material."

4. The soldiers who are the laity of the Salvation Army are not required to wear uniforms, nor are they prohibited from engaging in ordinary lay activities. In the Manual of Orders and Regulations for Soldiers of the Salvation Army, a soldier is instructed to let it be known wherever he works that he belongs to the Salvation Army. Such Orders then state: "This he will do most effectively by wearing—at times when full uniform is impossible—a shield or other Army badge upon his everyday or working clothes."

5. The Manual further states: "A soldier should avoid worldly fashions. This he will do most effectually by wearing a uniform." The Regulations further provide with respect to soldiers: "Every convert, directly he is saved, should make a beginning in uniform wearing. * * * Conformity to the fashions of the world in regard to dress —trimmings, jewellery, bangles, stylish cut, etc.—is inconsistent with the spirit of uniform wearing."

6. Eighty-six categories of jewelry are involved in this action and have been received in evidence. The items fall into four classes: (1) insignia which is required to be worn on Salvation Army uniforms, (2) brooches, emblems and pins which are paid for by a local corps and given to the wearer as an award for service in or connection with a Salvation Army unit or organization, (3) emblems, brooches, etc. which may be worn on or in connection with ordinary civilian clothes, but which identify the wearer as a soldier of the Salvation Army, (4) crosses of different designs, and a brooch which reads: "Jesus Saves", all of which have no special relationship to the Salvation Army. These are items 81–86, inclusive.

7. Four categories of luggage are involved in the action: bible cases, bonnet cases, brief cases and over-night cases. The bonnet cases and over-night cases are specially designed to take the uniform cap and other objects worn by officers of the Salvation Army.

8. The plaintiff distributes the items of luggage and jewelry from its warehouse on West 13th Street in New York City where its Supply and Purchasing Department is located. In order to make a purchase from this Department, a purchaser must satisfy the Department either that he is an officer in the Salvation Army or, if not, that he is a soldier in the Army with specific authority from his corps officer to make the purchase. Members of the general public may buy religious books from the Department, but they may not buy any of the luggage or jewelry. All except awards are paid for by the person who is to use them. Awards are paid for by the local corps.

## The Law

The excise tax on jewelry specifically provides that it shall not apply to "any article used for religious purposes". The question here involved is whether the articles which were sold by the Sal-

vation Army to its officers and soldiers or its local corps were "used for religious purposes". The Regulations define the phrase "articles used for religious purposes" as articles of a description ordinarily taxable "which are commonly used in religious devotion". [3] The government appears to argue that the statute requires that items of jewelry to be tax exempt must "be used in religious devotion". If by devotion is meant an act of worship, any such construction would undoubtedly unduly limit the language employed by Congress in creating the exemption. A religious purpose may well go beyond the using of the item of jewelry in religious devotions as that phrase is commonly used. "Religious purposes" is a phrase which is much broader than merely devotional purposes. The phrase "religious purposes" is one frequently used in taxing statutes and has a much broader scope than "devotional purposes". See Board of Foreign Missions of M. E. Church v. Board of Assessors, 1926, 244 N.Y. 42, 154 N.E. 816; Evangelical Lutheran Synod, etc. v. Hoehn, 1946, 355 Mo. 257, 196 S. W.2d 134.

■ It must be assumed that Congress in using the phrase "religious purposes" in the tax statute used it with due recognition of the commonly accepted meaning of that phrase. As so used, the phrase would not exempt from tax jewelry simply because it was bought by a religious organization, nor would it exempt from tax jewelry which was bought by any person or organization for purposes of "personal adornment or gratification".

Revenue Ruling 54–546 (1954 C.B. –2, p. 394) interpreting Regulation 51, § 320.37 of the Internal Revenue Code of 1939 provides:

"Articles falling within the classification of jewelry and having religious significance, such as Cross and Crown pins, buttons, and medals, when sold to churches or other religious organizations for use as awards in connection with religious programs of such institutions, are considered to be sold for religious purposes within the meaning of section 2400 of the Internal Revenue Code of 1939. The retailer is entitled to the exemption from tax with respect to sales of such articles provided he obtains a statement from the clergy or other leaders of the various religious denominations or organizations to the effect that the articles are to be used as awards in connection with their religious programs. Sales of these articles to individuals are subject to tax."

■ The very nature of the Salvation Army and the Rules and Regulations which it enjoins upon its officers and soldiers are such that they are forbidden to wear jewelry for purposes of personal adornment or gratification. They are required to wear their uniform with its accompanying insignia or other items of identification of their membership in the Salvation Army for the purpose of declaring to the world their allegiance to this organization and the principles for which it stands. Where the items of jewelry are used as insignia on uniforms and are required to be used

---

3. Regulation 51, § 320.37
"The phrase 'articles used for religious purposes' means articles of a description ordinarily taxable but which are commonly used in religious devotion. However, an article commonly used for non-religious purposes may be sold tax free if purchased from the retailer for use exclusively for religious purposes.

"Where an article otherwise taxable is sold for religious purposes and the article is of such nature as to be usable for non-religious as well as religious purposes, for example, crosses, candlesticks, vases, etc., the retailer must have in his possession a statement from the consumer certifying that the article was purchased solely for religious purposes in order to establish his right to exemption from the tax on the sale. However, if the article is of such nature as to be usable only for religious purposes, for example, a crucifix, rosary, chalice, etc., a statement from the purchaser or consumer will not be required to establish the tax exemption."

for such reason, the purpose of wearing the insignia is obviously a religious purpose. The same is true where the items are identifying badges or brooches signifying that they are soldiers in the Salvation Army. Where the items of jewelry are given as awards to children's groups in the church or to mothers of officers in the Army or as an indication of service in the Army, they again are used for a religious purpose.

All of the items of jewelry involved in this action fall within one of these categories except Items 81, 82, 83, 84, 85, and 86. These items which have no special relationship to the Salvation Army are similar to crosses or other insignia which may be worn by members of other Christian churches and which have no special purpose in the particular organization. It cannot be concluded that the exemption of items of jewelry "for religious purposes" would extend to such items of jewelry merely because they may have some religious significance. To be exempted from the impact of the tax, the jewelry must be worn for a particular religious purpose which must be divorced from any purpose of personal adornment.

There is no exemption of the excise tax on items of luggage sold for religious purposes. The plaintiff, however, contends that the tax may be assessed only on items "sold at retail" and that the Regulations define persons who sell at retail as "any person engaged in the business of selling articles to a purchaser at retail". The plaintiff contends that the Salvation Army, being a charitable religious organization, is not engaged in any business and therefore cannot be considered to be in the business of selling articles to a purchaser at retail. However, the certificate of incorporation provides specifically that "The Salvation Army shall have power * * * to own and conduct * * * the business of manufacturing or buying and selling uniforms and badges for the use of the officers and soldiers * * *." The fact that an organization is a non-profit organization engaged in religious or charitable enterprises does not mean that it may not, for the purposes of the excise tax law, be engaged in the business of selling objects at retail. If this were so, no charitable organization—as, for example, the Boy Scouts—could be charged an excise tax on sales of luggage made by it. When the Regulations use the phrase "engaged in the business of selling articles to a purchaser at retail", the Regulations obviously seek to distinguish between a casual and an isolated sale and a sale made in the course of continuous activity. The sales of luggage here involved were made to the ultimate user. They were made because of a legal activity of the Salvation Army. As such, they were sales at retail. See Gellman v. United States, D.C.Minn. 1955, 129 F.Supp. 291. Since there is no exemption for sales of luggage made for religious purposes, the tax was properly imposed upon these items.

The Court finds as a fact:

1. That all items of jewelry involved in this action were articles used for religious purposes, except Items 81, 82, 83, 84, 85, and 86.

2. That Items 81, 82, 83, 84, 85, and 86 are articles not used for religious purposes.

3. That the items of luggage involved in this action were sold at retail.

The Court makes the following conclusions of law:

1. That all items of jewelry involved in this action, except Items 81, 82, 83, 84, 85, and 86, were items to which § 2400 of the Internal Revenue Code of 1939 did not apply, and the tax was improperly assessed upon the sale of those items.

2. That the sale of the items of luggage involved in this action were properly taxed under the provisions of § 1651 of the Internal Revenue Code of 1939.

The computation of the amount of tax involved in the sales of luggage and in the sales of the items of jewelry which are held not exempt from the tax shall

be made by counsel and submitted to the Court.

The foregoing opinion constitutes the findings of fact and conclusions of law of the Court.

Settle judgment on five days' notice.