BASIC BIBLE CHURCH, PETITIONER v. COMMISSIONER OF
INTERNAL REVENUE, RESPONDENT

Docket No. 5221–79X.    Filed July 28, 1980.

*Robert E. Kovacevich,* for the petitioner.
*Elizabeth D. DePriest,* for the respondent.

OPINION

TIETJENS, *Judge:* Respondent determined that petitioner is not exempt from Federal income tax under section 501(c)(3),[1] and that petitioner is not a church described in section

---

[1]Unless otherwise stated, all statutory references are to the Internal Revenue Code of 1954 as amended.

170(b)(1)(A)(i). The prerequisites for declaratory judgment having been satisfied,[2] petitioner has, pursuant to section 7428, invoked the jurisdiction of this Court.

The issues for our determination are (1) whether petitioner or respondent carries the burden of proof in this proceeding; (2) whether petitioner is an auxiliary of the Basic Bible Church and not an independent organization which must qualify for section 501(c)(3) status on its own merits; (3) whether petitioner is operated exclusively for one or more exempt purposes delineated in section 501(c)(3), or whether petitioner is operated to serve the private interests of its founder, Francis Duval, and his family; and (4) assuming petitioner is held to be exempt under section 501(c)(3), whether petitioner is a church described in section 170(b)(1)(A)(i) and therefore not a private foundation.

The case was submitted on a stipulated administrative record under Rules 122 and 217, Tax Court Rules of Practice and Procedure. The stipulated record, which is assumed to be true for the purpose of this proceeding, is incorporated herein by reference.

Petitioner, an unincorporated Washington association which was organized on October 25, 1976, has its principal meeting place in Mica, Wash. On February 9, 1978, petitioner mailed its Application for Recognition of Exemption to the Internal Revenue Service, Ogden, Utah.

On January 23, 1979, respondent issued to petitioner a final adverse ruling letter which denied petitioner tax-exempt status for the following reasons:

You are not operated exclusively for one or more exempt purposes specified in section 501(c)(3) of the Internal Revenue Code. Furthermore, you are operated to serve private rather than public interests. We have also determined that if you were described in section 501(c)(3), you would be a private foundation because you are not a church described in section 170(b)(1)(A)(i), the only basis on which you claim non-private foundation status.

Petitioner's charter was granted by the Basic Bible Church of America, Minneapolis, Minn. (hereinafter Basic Bible Church), which has been granted exempt status under section 501(c)(3). The charter states that petitioner is a subsidiary or auxiliary

---

[2]Petitioner is the organization whose qualification is at issue, sec. 7428(b)(1); petitioner exhausted its administrative remedies, sec. 7428(b)(2); and petitioner filed its petition before the 91st day after respondent mailed his determination, sec. 7428(b)(3).

church of the Basic Bible Church and is established to further its religious doctrine and principles. Petitioner's charter provides the following terms and conditions:

1. That the Church shall be governed by Three or more Trustees who shall hold all Real and Personal Property in trust, either individually, or as joint tenants [sic] for this Auxiliary Chartered Church. No property will become the property of the parent Church or any other Church unless given by gift or by bequest.

2. This auxiliary Church shall remain unincorporated and no other churches or Orders may be formed by this auxiliary Church.

3. That this Church is organized primarily for Religious, Charitable, Literary and Educational purposes, exclusively.

4. That no part of the earnings of this Church will inure to the benefit of private shareholders or individuals.

5. That this Church, will not, as a substantial part of its activities, attempt to influence legislation, or participate in or against any candidate's political campaign for public office.

6. That this Church is not organized or operated for the benefit of any private interests, or other designated interests or individuals, or persons controlled, directly, or indirectly, by such private interests.

7. That this Church may accept and receive Contributions.

8. That this Church may employ missionaries.

9. That the Board of Trustees may lease, own and manage the Church and other Church property on behalf of the Church and may conduct other Church business in the same manner as if they were trustees of a common law trust.

10. That the duration of this Church shall be perpetual unless the Charter is revoked for a violation of these conditions.

11. That the office of the Church shall be at such place as the trustees may designate.

12. That the names and addresses of the Trustees shall at all times be filed with the Head Office of the Church addressed to P.O. Box 1708, Twin City Airport, Minnesota, 55111.

13. That this Church is formed and organized for the purposes set out in No. 3 above within the meaning of Section 501(c)(3) and 501(a), 26 U.S. Code, Internal Revenue Code of 1954.

14. That one of the purposes of this Church is to receive contributions and to pay them over to organizations that are described in Section 502(c)(3) [sic] and exempt from taxation under section 501(a) of the Internal Revenue Code of 1954.

15. That the Tenets or beliefs of the Basic Bible Church, which are the objects of conscientious regard and pursuit, and which are to be carried out conscientiously, by expression, association, conduct and ritual are The Magna Charta, The Declaration of Resolves of the 1st Continental Congress of 1774, The Declaration of the Causes and Necessity of Taking up Arms of 1775, The Constitution of the United States, The Declaration of Independence, The immutable Laws of Nature and Nature's Creator, and such parts and writings in the Sacred Scriptires [sic] consistent with the natural individual rights of

Man, and the doctrines, principles and teachings set forth therein are to be held sacred.

16. That this Church is organized to promote the principles of separation of Church and State as are set forth in Thomas Jefferson's "Virginia Statute on Religious Freedom" of 1786.

17. Upon the Disolution [sic] of the Church, The Board of Trustees shall, after paying and disposing of all legal liabilities of the Church, dispose of all assets of the Church exclusively for the purposes of the Church in such manner and to such organization(s), organized and operated exclusively for Charitable, educational, Religious or scientific purposes which shall at the time qualify as an Exempt organization under 501(c)(3), of 26 U.S. Code, as the Board of Trustees shall determine. Any such assets not so disposed of shall be disposed of by the Court of Common Pleas of the County in which the principle office of the Church is then located, exclusively for such purposes to such organization(s) as the said Court shall determine which are organized and operated exclusively for such purposes.

18. That this Church Charter does not go into effect until it is agreed to by the Trustees of the Church Chartered hereby.

19. That the trustees of the Church Chartered hereunder may make such rules and by laws not inconsistent herewith. * * *

20. That the trustees of this Auxiliary Church have no power or authority to charter any other church under this church.

21. That this Auxiliary Chartered Church is not under the management, direction or control of the parent church and therefore the parent church is not liable for any debts, obligations, engagements entered into or liabilities of any kind or nature incurred by the auxiliary church.

22. That likewise, the parent church is not under the control o[f] the Auxiliary Church in any of its business dealings and in so doing business of any kind or nature, the Auxiliary Church is not liable for any debts, obligations or engagements entered into or liabilities of any kind or nature incurred by the Parent Church.

23. This Charter is granted upon the further condition that the members of the Basic Bible Church are bound by oath or affirmation that they support the principles of the Basic Bible Church including the principle and sacred belief that each individual owns the right over his own life, that he owns no right over the life of any one else, and that no one owns any right over his life.

Further, the Basic Bible Church abhors and detests the basic Comministic [sic] Principle, "That the Citizen exists for the sake of the State", and supports the basic Capitalistic principle that the Citizen exists for the sake of himself, his family and those others whom he choses by the exercise of his own free will.

The Basic Bible Church is founded upon the liberty of Religious Association, the right to the pursuit of knowledge and the free use thereof by those of the same philosophy.

On October 25, 1976, petitioner's charter was signed by Jerome Daly, vice president and presiding archbishop of the Basic Bible Church, and by Francis D. Duval (hereinafter Francis), Janice E. Duval (hereinafter Janice), and Misty E.

Duval (hereinafter Misty). On November 17, 1976, the charter was filed with the Auditor's Office, Spokane County, Wash. (hereinafter Auditor's Office).

Petitioner's bylaws designate petitioner as the Order of Almighty God, Chapter 4017, of the Basic Bible Church of America, and provide that Francis is its head officer and as such is the sole authority regarding doctrinal disputes within the chapter and regarding disbursement of petitioner's funds and property, including disbursements to himself. In addition, petitioner's bylaws provide that Francis holds title to all of petitioner's property, both real and personal, in his own name.

Francis' wife Janice and their daughter Misty are petitioner's other officers and trustees; however, they have no voting rights and act only in an advisory capacity.

Francis is employed as an investment developer. At the same time petitioner filed its charter, it filed a statement directing Francis' employers, pursuant to sections 3402(n) and 3401(a)(9), to cease withholding taxes from his compensation. The statement declares that Francis incurs no liability for social security taxes and is exempt from both Federal income and unemployment taxes.[3]

Francis, as petitioner's head, took a vow of poverty which was executed on October 26, 1976, and filed on November 16, 1976, with petitioner's bylaws in the Auditor's Office. The vow states that Francis and Janice are making an irrevocable gift to petitioner of all their income, real and personal property. The gift is conditioned on, among other criteria, petitioner's receipt of tax-exempt status. If tax-exempt status is not obtained, the gifts will revert to the donors.

On or about October 25, 1976, Francis and Janice transferred the following assets to petitioner:

| | |
|---|---:|
| Furniture | $5,000 |
| Riding and recreational equipment | 6,500 |
| Automobile (equity) | 1,500 |
| Miscellaneous | 1,500 |
| | 14,500 |

From May 1977 to January 15, 1978, petitioner received gross

---

[3]The record, however, does not state whether this notice was delivered to Francis' employer.

contributions of $32,891.28. Although failing to specify what portion of this total was made by the Duvals, petitioner explained that the Duvals bore most of the financial burden of supporting it.

During this period, petitioner's expenses totaled $32,000 of which $24,000 was paid for its minister's[4] subsistence allowance and $8,000 for the "promotion of the Church and its doctrine." The latter expense reflects the following payments:

| | |
|---|---:|
| Advertising (12 months) ......................... | $80 |
| Printed materials and religious tapes ........ | 220 |
| Travel ............................................... | 4,000 |
| Parsonage allowance: | |
| Utilities ........................................... | 1,500 |
| Upkeep expenses ............................... | 2,200 |
| | 8,000 |

Petitioner also has at least[5] the following liabilities:

| | |
|---|---:|
| Automobile loan ...................................... | $6,493.49 |
| Remainder owing for fuel delivered to fuel tanks, gravel for driveway and parking area, and parsonage items charged at local department stores ..................................... | 3,500.00 |
| | 9,993.49 |

Francis and Janice are petitioner's two ministers. After having studied its principles and doctrine, on October 25, 1976, they were ordained by, and received two Doctor of Divinity certificates from, the Basic Bible Church. A gratuity was paid to the Basic Bible Church for the ordination certificates. Janice, in addition, had attended the Stonecroft Bible Study.

As ministers, Francis and Janice are required by the Basic Bible Church to carry out the following religious duties:

(1) To conduct regular religious services which shall include reading aloud from the Declaration of Independence, the United States Constitution, and the preamble and bill of rights of various State constitutions and to keep a record of religious

---

[4] Petitioner describes expenses paid for its minister despite its having two ministers.

[5] On its Application for Recognition of Exemption, petitioner estimated an additional approximately $6,000 in debts which is unexplained in the administrative record.

services as well as to make an outline report of those services and other religious work on a semiannual basis to Jerome Daly;

(2) To distribute a document containing the fundamental beliefs of the Basic Bible Church and to reprint and distribute passages from the Holy Bible that the ministers deem consistent with the philosophy of the Basic Bible Church;

(3) To use Francis' occupation in the business and investment development trade as an instrument for carrying out petitioner's principles and as a focal point for the distribution of petitioner's materials;

(4) To be employed in order to earn income with which to support themselves as ministers, their family, and petitioner's members and workers;

(5) To use petitioner's income in order to carry out the purposes of the order and the church;

(6) To act as an evangelist on a 24-hour basis;

(7) To take the document containing the tenets of the Basic Bible Church with them on all trips and have it available for distribution;

(8) To keep all information regarding church affairs in strict confidence; and

(9) To consult Jerome Daly on any doubtful questions that may arise.

The total time petitioner's two ministers spend on church activities ranges from 6 to 12 hours a week.

Petitioner submitted the following books, pamphlets, and documents as examples of the religious material it distributes: The Declaration of Independence and the Constitution of the United States of America; Good News for Modern Man, The New Testament; publications from Inter Varsity Press including "Personal Evangelism," "Who is My Neighbor?" "Evangelism: Why & How"—all by John R. W. Scott; "Program for a New Man," by James W. Sire; "Small Groups," by Michael Wiebe; the Moody Press publication "Beside Still Waters," by Walter Brown Knight; and the Campus Crusade for Christ, Inc., publication "How to Help Fulfill the Great Commission," by Bill Bright.

Petitioner's bylaws state that its ministers should file their ordination certificates with proper governmental officials so that they may perform marriages. The only other "sacrament" noted in the administrative record is the dispensation of natural

vitamins, including vitamin B–17, or laetrile, for healing purposes.

From the fall of 1976 until the summer of 1977, petitioner conducted weekly services. Since the summer of 1977, however, its services have been held on a monthly basis in the Duval home which petitioner calls the parsonage.[6] The service consists of prayer, a sermon, and a request for contributions. The congregation consists of from 3 to 12 members, excluding the Duvals. Although petitioner states that it posts regular notice of scheduled church meetings, only one announcement for services, appearing in the Spokane Daily Chronicle on December 4, 1976, is found in the record.

Petitioner does not have a school for the preparation of ministers nor does petitioner maintain a Sunday school for educating the young.

In its Application for Recognition of Exemption, petitioner stated that its charitable activities have consisted of transporting the elderly, providing recreation and guidance for young persons, feeding the hungry, and consoling persons with drinking or marital problems. In addition, it stated that it extends all types of aid—financial, social, and psychological—to all persons regardless of race or creed. Petitioner, however, submitted no specific documentation in support of these statements; petitioner also submitted no criteria by which the recipients of this aid were chosen. Moreover, petitioner stated that it extends financial aid to the Union Gospel Mission in Spokane and the David Livingstone Missionary Foundation; yet, it failed to provide figures on the amount of its contributions to either organization.

Petitioner contends that respondent has the burden of proof since the denial of an exemption here is based on speculation and conjecture. Additionally, on substantive issues, petitioner argues that (1) the exemption given to the Basic Bible Church includes petitioner, as it is one of that church's locations; and (2) petitioner's net earnings do not inure to the benefit of private individuals.

By contrast, respondent maintains that (1) petitioner has the burden of proof in this proceeding; (2) petitioner is a separate legal existence from the Basic Bible Church and must, therefore,

---

[6]Petitioner states that when funds allow, it will build a separate church.

qualify for exemption on its own merits; (3) petitioner has failed to establish that it is operated exclusively for religious or charitable purposes; (4) petitioner serves the private interests of its founder; and (5) assuming arguendo petitioner is entitled to tax-exempt status, petitioner is a private foundation because it has failed to prove that it is a church within the meaning of sections 509(a)(1) and 170(b)(1)(A)(i).

## I. *Burden of Proof*

Petitioner claims that under the rule of *Weimerskirch v. Commissioner*, 596 F.2d 358 (9th Cir. 1979), revg. 67 T.C. 672 (1977), which it asserts we must follow according to our rule in *Golsen v. Commissioner*, 54 T.C. 742 (1970), affd. on other issues 445 F.2d 985 (10th Cir. 1971), "A deficiency determination which is not supported by the proper foundation of substantive evidence is clearly arbitrary and erroneous." 596 F.2d at 362. Petitioner proceeds that since respondent has made no independent investigation of any facts nor produced any admissible evidence of any kind, his disallowance of exemption to petitioner is merely the result of speculation and conjecture; therefore, according to petitioner, the burden of proof shifts to respondent.

Petitioner, however, misconstrues the applicability of *Weimerskirch v. Commissioner, supra, Golsen v. Commissioner, supra,* and the rules governing a proceeding under section 7428. In *Weimerskirch*, there was a dearth of evidence introduced at trial either to prove or disprove the taxpayer's income from unreported sales of heroin; the Ninth Circuit refused to allow the Commissioner to win solely on the presumption of correctness which, under Rule 142(a), Tax Court Rules of Practice and Procedure, we attach to his deficiency determination. In the instant case, by contrast, we have the entire administrative record which contains facts, assumed to be true for the purpose of this proceeding, on which to base our decision. The rule in *Golsen*, therefore, would not apply since we need only "follow a Court of Appeals decision which is squarely in point where appeal from our decision lies to that Court of Appeals and to that court alone." 54 T.C. at 757. Clearly, we are not faced with a procedural situation "squarely in point" with the Ninth Circuit's decision in *Weimerskirch*.

Section 7428(a) grants this Court jurisdiction to review an organization's initial qualification as an organization described

in section 501(c)(3) which is exempt from taxation under section 501(a). Our determination is ordinarily based on the facts contained in the administrative record. See Rule 217(a), Tax Court Rules of Practice and Procedure. Petitioner had ample opportunity during the administrative procedure to submit facts which would establish its qualification for tax-exempt status. We have previously stated that, in a proceeding pursuant to section 7428, petitioner bears the burden of proof to show that respondent's determination is wrong. *Hancock Academy of Savannah, Inc. v. Commissioner*, 69 T.C. 488 (1977); Rule 217(c)(2)(i), Tax Court Rules of Practice and Procedure. That there may be a paucity of facts in that record is not a basis for shifting the burden of proof to respondent.[7]

## II. *Effect of the Basic Bible Church's Exempt Status on Petitioner*

Petitioner contends that as an auxiliary of the Basic Bible Church, it shares that organization's tax-exempt status. In support of petitioner's identification with its parent church, petitioner states that the names of its trustees must be filed at the "head office," that petitioner must carry out the basic beliefs of the Basic Bible Church, and that petitioner's bylaws state that petitioner is under the vice president and highest authority of the Basic Bible Church.

Petitioner analogizes its relationship to its parent church both to the United Methodist Church, whose local churches are part of the whole church even while having a separate existence, and to the Salvation Army and its components. Petitioner cites *Boyer v. Commissioner*, 69 T.C. 521 (1977), and *Salvation Army v. United States*, 138 F. Supp. 914 (S.D. N.Y. 1956), to support its assertions. Neither case, however, is in point.

We find that petitioner is legally separate and distinct from its parent church. Though it subscribes to the beliefs of the Basic Bible Church, petitioner's charter specifically states that it "is not under the management, direction or control of the parent church and therefore the parent church is not liable for any

---

[7]Respondent would have the burden of proof with regard to matters not stated in his notice of deficiency. Rule 217(c)(2)(ii), Tax Court Rules of Practice and Procedure. Respondent, however, here relies only on those grounds set forth in his deficiency notice and therefore does not have the burden of proof shifted to him.

debts, obligations, engagements entered into or liabilities of any kind or nature incurred by the auxiliary church." The same separation adheres to petitioner with respect to liability for the debts, etc., of the parent church. Similarly, petitioner's charter provides that its property does not belong to the parent church.

Because petitioner is legally distinct from the Basic Bible Church, petitioner must prove that it qualifies for tax-exempt status under sections 501(c)(3) and 501(a); evidence of the parent church's exempt status is immaterial to a determination of petitioner's qualification.

### III. *Operational Test*

In order to be exempt under section 501(c)(3), an organization must qualify under both the organizational and the operational tests. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Respondent based his denial of tax-exempt status to petitioner on the operational test.

The operational test requires that an organization's activities be primarily those which accomplish one or more exempt purposes as specified in section 501(c)(3), and not, except to an insubstantial part, those which do not further an exempt purpose. Sec. 1.501(c)(3)-1(c)(1), Income Tax Regs. The existence of a substantial nonexempt purpose, regardless of the coexistence of an exempt purpose or purposes, precludes an organization from qualifying under section 501(c)(3). *Better Business Bureau v. United States*, 326 U.S. 279 (1945); *First Libertarian Church v. Commissioner*, 74 T.C. 396 (1980).

Moreover, an organization is not operated exclusively for one or more exempt purposes unless it serves a public rather than a private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. See *Baltimore Health and Welfare Fund v. Commissioner*, 69 T.C. 554 (1978); *Callaway Family Association v. Commissioner*, 71 T.C. 340 (1978). Therefore, an organization must establish that it is not operated for the benefit of private interests such as the creator or his family. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs.

We find that petitioner has not satisfied the operational test of section 501(c)(3).[8] Petitioner serves the private interests of its founder, Francis, and his family; the presence of this substantial nonexempt purpose prevents petitioner from qualifying as a section 501(c)(3) organization.

Francis has total control over the management of petitioner's affairs and determines how its money will be spent. He holds title to all property, both real and personal, in his own name. In addition to the assets the Duvals transferred to petitioner, petitioner lists as its liabilities an automobile loan of $6,493.49 and debts for fuel for the Duval residence, gravel, and charge account items amounting to approximately $3,500.

When Francis and Janice executed their vows of poverty, they declared that they were making a gift of all their possessions, real and personal, and all their income to petitioner. Yet, the vow also provided that in the event that petitioner did not secure tax-exempt status, the gifts would revert to the donors.[9]

The same day that Francis and Janice took vows of poverty and organized the church, they filed a notice declaring that Francis was exempt, pursuant to sections 3402(n) and 3401(a)(9), from withholding of Federal income and unemployment taxes. The notice directed his employer to "cease forthwith the withholding of any and all taxes from the remuneration of this above mentioned member."

Of the $32,891.28 in contributions received, petitioner expended $24,000, or nearly 75 percent, to Francis as a subsistence allowance. Another $4,000 was paid for travel with there being no evidence in the administrative record indicating dates, places, and events requiring travel or how it furthered church purposes. Likewise, another $3,700 was spent to pay the utilities and upkeep of the parsonage, the Duvals' home.

Clearly, despite its also serving religious and charitable purposes, petitioner exists to a great extent to serve the private benefit of the Duvals. By contrast, less than approximately 1

---

[8]Because we have so found, we will not consider the issue of whether petitioner qualifies as a church described in sec. 170(b)(1)(A)(i) and therefore not a private foundation.

[9]While it may be common, as petitioner contends, that many charitable gifts are conditioned on an organization's being exempt under sec. 501(c)(3), that the Duvals' gifts to petitioner are thusly conditioned may not, as petitioner suggests, be seen as evidence disproving private benefit to those individuals.

percent of petitioner's contributions were disbursed for directly related church purposes: $80 in advertising expenses and $220 for printed materials and religious tapes. Although petitioner states that its purpose is to aid the young, the elderly, the hungry, and those people with drinking or marital problems, there is no record of any disbursements for these purposes. Since petitioner's financial decisions are controlled by Francis, there exists the opportunity for abuse which, in turn, evinces a need for open and candid disclosure of all the facts. *Bubbling Well Church of Universal Love, Inc. v. Commissioner*, 74 T.C. 531 (1980); see *Church in Boston v. Commissioner*, 71 T.C. 102 (1978).

For all of the above reasons, we find that petitioner has failed the operational test of section 501(c)(3) and, therefore, is not exempt from Federal taxation under that provision.

*Decision will be entered for the respondent.*