ANTHENAGORAS I CHRISTIAN UNION OF THE WORLD, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Athenagoras I Christian Union of World, Inc. v. Commissioner
Docket No. 18744-86X.
United States Tax Court
T.C. Memo 1988-196; 1988 Tax Ct. Memo LEXIS 224; 55 T.C.M. (CCH) 781; T.C.M. (RIA) 88196; May 4, 1988. Robert Bouchlas (a director), for the petitioner. Julie M. T. Foster, for the respondent. POWELL
POWELL, Special Trial Judge:[1] This case is before the Court on petitioner's petition for declaratory relief under section 7428. [2]
The facts are as follows: Petitioner was incorporated as a "corporation not for profit" under the laws of Florida on February 10, 1978. The articles of incorporation provide that the general nature of the corporation is "to promote *226 brotherly love and Christian unity among all churches, one flock under one shepherd." Thomas Bouchlas
President
Clearwater, Florida
John Athas
Vice-President
Clearwater, Florida
James Anderson
Treasurer
Clearwater, Florida
Robert Bouchlas
Secretary
West Palm Beach,
Florida
The directors were the same individuals. The subscribing incorporators were Peggy Parker, Barbara Nichols and Marion Parker. Their address is shown as 216 South Duval Street, Suite 208, Tallahassee, Florida. The articles could be amended by three-quarter vote of the "members." The membership was defined as "all persons hereinafter named as officers and directors and such other persons as from time-to-time may become members by volunteering his services and believing in the long term goal of the organization and pledging allegiance to the organization." [Ex. 6-F.] The directors were authorized to "provide such Bylaws for the conduct of business * * * as they may deem necessary from time-to-time." The "Bylaws may be amended, altered or rescinded by a three quarters vote of the members * * *." The corporation's principal place of business was 4414 Washington Road, West Palm *227 Beach, Florida 33405. This was also the address of Robert Bouchlas. On February 10, 1978, Robert Bouchlas and his wife, Lois, donated all the common stock in Eco-Tec, Inc. to petitioner. Eco-Tec was a for-profit corporation that apparently either conducted or attempted to conduct salvage operations under contract with the Bahamian government. On December 26, 1979, Robert Bouchlas executed a deed in which he purported to transfer the 4414 Washington Road property to petitioner. The deed provided that: In the Event of Disolvement or Abondonment of Corporation Full Title to revert to the LIFE ESTATE of Robert and Lois Bouchlas; Both or Singlelarly, survivorship of them * * * [thereafter, to his heirs]. [Reproduced literally.]
The deed states that the property is subject to a $ 30,000 mortgage deed executed on April 20, 1978, to Katina Bouchlas. The deed also purports to restrict any alienation of the property. The Bouchlases also conveyed their automobile and a car to petitioner during 1979. The Bouchlases resided in the house throughout. They paid no rent. On their 1981 and 1982 Federal income tax return, the Bouchlases claimed deductions for charitable *228 contributions based on the transfer of the Washington Road property. On July 22, 1980, petitioner filed an Application for Recognition of Exemption (Form 1023) with the Internal Revenue Service. On the application petitioner stated that its sources of income were (1) "Book Copyrights" and "Other Media Publications"; (2) "Lease holdings, marine; Bahamas Government; Treasure-Archiological Trouths"; (3) "Unsolicited Donations". (Repro. lit.) The application was incomplete and most of the application was unintelligible. On September 9, 1980, respondent wrote petitioner requesting additional information, inter alia (Ex. F): 1. A proposed budget for two years 2. A description of past, present and proposed activities 3. Copies of pamphlets and newspaper articles concerning petitioner 4. Number of members 5. Information concerning Eco-Tec
The letter also informed petitioner that its organizational instrument did not provide a proper provision for the distribution of assets upon dissolution. By letter dated September 15, 1980 (Ex. GA), petitioner stated that it had no budget or income projection. With regard a description of activities, petitioner stated: "We *229 are writing religious materials. Enclosed * * * Not published, only prepared to date. Evangelizing; Preaching. * * * Thru Book publication promoting Christian Unity because of World Times and Future War, which has begun. Russia will move on Israel before March, 1981." (Repro. lit.) Petitioner also enclosed, inter alia, various letters written to and from public agencies and church officials concerning a proposal to retrieve a satellite or meteorite and the ecological, political and religious concerns of Mr. Bouchlas. As to membership, petitioner stated "Six active Directors legaly to date -- All others are invited after total organizational patterns are implemented." (Repro. lit.) With regard to Eco-Tec, petitioner stated "Only its account priviously stated -- and Bahamas lease. no Eplmt." (Repro. lit.) (Ex. G-a.) Petitioner also enclosed a copy of a letter (Ex. GF) to the Secretary of State of Florida that stated: Please have the Corporation Division amend our Corporation Document to have a dissolution Clause that reads as follows: In Accordance with Article IX & VIII, as approved 3/4 vote; special meeting, By-Laws.
"In the event of dissolution, residual assets of *230 the above organization will be turned over by the Secretary of A.C.U.W. Inc the Corporation, Robert Bouchlas, a/k/a/ HARA LAMBOS; by His hand, to the exempt organizations, which in themselves, are named now, Monastery-Churches and organization; described in sections 501 (c) (3) and 170 (c) (2) of the Internal Revenue code of 1954 as qualifying Organizations to wit: * Organization - St Vincent De Paul 85% of Cash residual Bank Accounts or Computer Credit. This Only. To be given to Poor & needy; no administration. * 15% To be given to all creditors claiming indebtedness toward Corporation, or held in escrow by jurisdictional court, local Judge, to discharge any claim having come forth for any reason. Judge named by surviving Director or Directors of Corporation. If none, then to exempt Church Charitys by Judge. * Boat Donated, formerly known as "Independent"; Artifacts valuable or otherwise; writings, letters, documents, agreements, any legal papers, Books, ships furnishings or movable household goods so deemed to be given to Saint Catherines Monastery at Mount SINAI, Sinai Peninsular, Israel-Egypt, Middle East, Which will be delivered by Haralambos P. Panagakos, *231 Physically & himself (2) with aid, to this Greek Orthodox Autocephaleous, Christian Church, only unto itself at Mt. Sinai. * Property now donated to be discharged as described on deed. If no named survivors as stated, Deed to St. Catherines Monastery at Mt. Sanai and no other." "WE PRAY THIS THE LORD'S WILL BE DONE". * * * [Reproduced literally.] On December 2, 1980, respondent requested the following information (Ex. I): a) Please list, in order of priority, the activities which are to be covered under tax exempt status. Include where the activity is conducted, who conducts it and how it is financed. Please keep in mind that only those activities listed will be covered should you receive tax exempt status. b) Because you were incorporated in February of 1978 please provide a schedule (list) of income received by Athengoras [sic] and expenses that it incurred. Your accounting period ends Dec, 31 so the periods you need to account for are (1) Feb. 10, 1978 - Dec. 31, 1978; and (2) January 1, 1979 - December 31, 1979. (Please be sure you specify the sources of income such as contributions funneled through Eco Tec.) If you have received funds this year, please prepare *232 a schedule of those sources. c) What assets does Athengoras [sic] currently own? d) Is Athengoras [sic] retaining all royalty and copyrights of the books being published?
Petitioner responded:
15 a. Activities:
WHO:WHERE:
1. Religious Writing & Book Publications. Ed Hampson, Roubert Bouchlas.
Offices. HOW: Financed by Donations, Sales on Book, Royalties and Advertizements.
2. Vessel "Independent" used exclusive for Evangelizing. All Directors involved. In Florida waters primarly. Donations and contributions-Materials and Labor.
3. Bahamas Expedition. Subcontracted to Exp. Unlmtd. Inc. to conduct Salvage under Lease, on Wreck Site.Indpt. Salvor finances self.pays all their own. Athenagoras ONLY Interest are Golden Madonna & Christ Statue,as well as VERIFYCATION of religious history, which will appear in Next Book -- Titled "THEOU THALASA" (GOD'S OCEAN) by Hara/Lambas-a/k/a/(Robert Bouchlas) Psydn.Name.
4. Preaching Prophesy: Robert Bouchlas & All Directors, Donations.
U.S.A. & Israel.
5. Office-Sanctuary-4414 Washington Rd. West Palm Beach, Fla. Donations. All Directors
15b. All *233 of Eco-Tec inc. was priviously included & described on Page#5 Part V-Financial Data Form, original applic. Feb. 1978-80 Feb. 1980-till Dec.1980 are as follows Tru Eco*tec Only:
Donations to Eco-Tec Inc for Expenses to operate Office, Boat Travel & car exp.
DONATION
Expedition Unlimited Inc-
500.00
Sam Bouchlas Landscape-
1105.00
Robert Bouchlas-
1000.00
2605.00
NONE (Finances Thru Athenagoras) Will Commence January 11980 with all Finances funneling Thru Athenagoras Christian Bank accounts. Will Close all Business With Eco-Tec Inc. and Let Corp. Dissolve through StateProcedures.
15c. ASSETS:
1974 Cadillac Pick-Up Truck Office-Retreat-Sanctuary 4414 Washington Rd. West Palm Bch. Boat 1924 Fishing boat converted for Floating CHAPEL. All Stock of Eco-Tec Inc. fla. profit corp. converted. to Function for A.C.U.W.INC. only.
15d. YES All Matters of Monetary Value in ALL PROJECTS. No income to any Directors for any Projects. Only Expenses in keeping with I.R.S. CODES to E/O. [Reproduced literally.] Respondent, on March 27, 1981, wrote petitioner (Ex. L) that "the information * * * submitted has not provided sufficient *234 details to conclude that "petitioner meets the requirements to be exempt under section 501(c)(3). "It is, therefore, requested that you operate for a period of one year to establish a more specific program of operations." Petitioner requested a conference with the Appeals Staff. On April 3, 1981, petitioner transferred one-half the stock in Eco-Tec back to Robert Bouchlas and purported to give Mr. Bouchlas voting rights over the remaining stock. After a conference, on December 9, 1982, with the Appeals Officer, petitioner's application was returned to the District Director for forther consideration. Respondent then requested: 15. We have received your file from the Regional Appeals Officer. At the appeals conference, it was brought out that you were currently engaging in the following activities;
(A) A museum;
(b) A sanctuary;
(c) A daily religious radio program
(d) Museum display at Flagler Museum;
(e) A counseling ministry;
(f) Personal Evangelism;
(g) A retirement home; and (h) Publication of a book entitled, "Gods Ocean". With respect to each activity listed above, please provide a narrative description as to how you are involved. 16. If you are operating *235 as a church, please provide the information requested by the attached sheet entitled "Churches." 17. Please submit financial statements for the years ending Dec. 31, 1981 and 1982. This should include a statement of receipts and expenditures and balance sheets. 18. With respect to your cook "Gods Ocean", indicate who will hold the copyright and receive royalties. 19. Indicate whether the salvage operation in the Bahamas is still in effect. 20. Information in the file indicates that the Bouchlas family resides on property transferred to you by the Bouchlas family. Please describe this arrangement, whether rent is paid by you, whether it is used rent free, who is responsible for upkeep, etc.
Petitioner responded: 15. a. Public display that was exhibited at Flagler museum, which is being shown to Mentally disturbed children, others for counciling purposes; Using the display as an Educational visual tool, preaching the principle aspects of the Gospel of Jesus Christ. Publically, by appointment or invitation. b. We have alters and pray with those who come in need, and seek Christian counciling . . . Usually by references, of those who have Past found refuse *236 and support by our ministry of healing and deliverance. c. This has been discontinued, at this time. We are seeking support from the Moody Bible Institute for a future opportunity to air on WORMB FM 89 Boynton beach, and have appointment on Approx. Feb 7, for this purpose. (Manager Dick Florence). d. This was terminated by the Flagler Museum May 1, 1982 after the four month showing . . . (one normal agreed season). e. We one on one counsel any Christian who needs a better understanding of Holy Scripture, Himself in relationship to Christ, and the need for prayer, Healing, such as Alcoholic sickness, or attitudes the individual seeks personal prayer . . . All unsolicited, but come to us by those GOD sends, or referal of other Christians (All or any mainline Denominations,) recognized as religious Institutions of Christianity of the IRS CODES. NO OCCULT OR CULTS INVITED OR PERMITTED THRU OUR DOORS. f. Our entire thrust is designed to Evangelism. Books, Radio, Tapes, Counseling, Bible study, Retreat, Sanctuary, Museum, to Jesus Christ' KING JAMES 1979 version of the four Gospels of Matthew, Luke, Mark and John, depicting Our LORD'S Ministry to the World. *237 f. We did not engage, due to Zoneing laws a retirement home; We did however, by permission of City codes engage in opening our retreat to Christians in need to live here and aid and donate Time and Money to this Ministry. We have three Ladies now living here as such. h. Has not due Literary agent not being decided upon, at this time, been considered for publication. Will decide in future best course to pursue for best exposure to target audience, and revenues to aid our Evangelical programs. * I personally am the main thrust of involvement in all of the above because of my PERSONAL 100% commitment to do so for OUR LORD (1978). Our Other Directors are interested and do advise and aid, by time or money, or efforts, and prayers. They have other secular, religious activitys that require most of their attention, yet recognize my full time participation in activitys of this ministry, which IRS has been informed, in each and every case; yet deny this ministry NOT, when ever called upon; we never measure their contribution. 16. We are not operating as a church, only because zoneing will not permit it and we would then be in legal violation of West Palm Beach Codes. We, however, *238 conduct a weekly Bible Learning class 7:30 to 9:00 Tuesday evenings, as well as individual instruction as needed. . . . Yet we pray and are a Church as defined by Holy Scripture . . . The Body of Christ . . . " Ecclesia" . . . Assembly of Believe. 17. 1981 Financial statement enclosed . . . 1982 will not be prepared until after Feb. 10 th 1983, for preparation to file IRS Return by April 1983. 18. All Copyrights are to be Held by this NON/Profit Organization unless declared not eligible by IRS to be Tax exempt or is disolved, then all rights would be transfered to the life/estate of Robert Bouchlas, or items so specified, on file IRS as "disolutionment Claus," original minutes of Corporation. 19. The salvage operation is not in affect, nor the Bahamian lease active. However, we wish to divest ourselves entirely of all artifacts, wether valuable or nor are returning all intrinsic items to the Govt. of Bahamas for division as per their instructions, as they were on loan. We may, however, recieve donations, from others * * * who may proceed with the project, making separate agreements with the Bahamiam, as Individuals, * * * who have promised *239 to donate only to our cause and Non/Profit Religious activitys of Ministry. No one or Directors of our organization is a part of any future endeavor. Exception Eco Tec Inc. and Robert Bouchlas individually to protect past investments owned by them, yet donated. 20. All monies recieved for occupancys of any kind are deposited in the sole accounts of the Christian Organization as a donation to the organization, to support the Evangelical Ministry, Repairs to structure, Utilities, any cost incurred by Ministry and so specified by DEED on file in your IRS EO/EP offices. The structure has no mortgage. ALL PAY according to the projected needs as the ministry sees its needs . . . This has only begun recently but may be verified by contacting IRS West Palm Beach who has inspected Physically Sq. Ft. occupancy by all, includ- Mr. Bouchlas and Wife only, as well as others, (Wayne Jackson IRS EXAMINER Tel # 305-8334551 WPB, Fla.) Mr. Jackson gave us a clean bill of health in regards to our activity, as well as financial propietys. If so necessary Mr. & Mrs Bouchlas would move out, if so designated by IRS code. It is a convienience and Money saver to the organization to have *240 a free Resident Mgr. (Mr. Bouchlas) to supervise the Retreat. We have an "OPEN" door policy for Christians in need, to remain here to be ministered to, Bring to Christ, Teach, heal, Pray for, yet must ernestly SEEK HELP, not a place to live. Utilities in the past have been paid by R. Bouchlas & Wife. [Reproduced literally.]
On April 13, 1983, respondent notified petitioner (Ex. X): You were created to promote brotherly love and christian unity among all churches. This is broader than the purposes permitted by section 1.501(c)(3)-1(b)(1)(iv) of the income tax regulations. Your assets are not dedicated to an exempt purpose as required by regulations 1.501(c)(3)-1(b)(4) since they would revert to the life estate of Robert Bouchlas. The car, boat, copyrights and other assets would become the property of your Articles of Incorporation. The residence becomes the property of Robert Bouchlas as stated in the Warranty Deed. Therefore, you fail the organizational test required by regulations 1.501(c)(3)-1. You fail the operational test required by regulations 1.501(c)(3)-1 because you are operated for the private benefit of Robert Bouchlas. *241 You are providing a residence for the Bouchlas family which will revert to Robert Bouchlas upon dissolution. You have not shown that the residence is used for substantial exempt purposes other than having an altar for prayer, conducting a weekly Bible Study and a place for persons in need of a place to stay until they can find a home. You state that you are not operating as a church. You have not shown that your activities serve a public rather than a private interest as required by Regulations 1.501(c)(3)-1(d)(1)(ii). You have not shown that you are engaged primarily in activities which accomplish one or more exempt purposes as required by section 1.501(c)(3)-1(c)(1) of the regulations. On May 11, 1983, Robert Bouchlas filed a "Corrective Warranty Deed" relating to the 4414 Washington Road property. The deed provided: [3]
Dissolutionment of Grantee: to b St Michael' Chapel-church of the Greek Pan Orthodox Church of Canada & America for Christian religious purposes and Retreat for Christians thruout all Tribulation, Forever. This mainline Religion is under the Eclessiastical jurisdiction of the Patrichate of Alexandria and no other. Upon dissolutionment St. Michael's Chapel *242 to be St. Catherine's Greek Orthodox Monestary at Mt. Sinai, Egypt. ALL OTHER ORIGINAL COVENENTS ARE RECOGNIZED AND NO VERIFIED IT GRANTOR This Corrective Warranty Deed is being recorded solely for the purpose of eliminating any reference to a life estate and eliminating and voiding the intent of the life estate as in Deed recorded in Official Record Book 3200, Page 1386, recorded Dec. 26, '979, Public Records of Palm Beach County, Florida John B. Dunkle, clerk Circuit Court. [Reproduced literally.] The St. Michael's Chapel (also called St. Michael's Chapel -- Elijah Ministry) of the Greek Pan Orthodox Church of Canada and America is a creation of Robert Bouchlas. On February 6, 1986, petitioner purportedly amended its Articles of Incorporation: We have a dissolution clause that reads as follows: *243 In Accordance with Aticle IX & VIII, as approved 3/4 vote; special meeting.By Laws.
"In the event of dissolution, residual assets of the above organization will be turned over by the Secretary of A.C.U.W. Inc. the corporation, Robert Bouchlas, a/k/a/ HARA LAMBOS; by His hand, to the exempt organizations, which in themselves are named now, Monastery-Churches and organizations; described in sections 501(c) (3) and 170 (c) (2) of the Internal Revenue code of 1954 as qualifying organizations to wit: * Organization-St. Michael Chapel: W.P.Bch., Fl. 85% of Cash residual Bank Accounts or Computer Credit. This Only.
* 15% To be given to all creditors claiming indebtedness toward Corporation, or held in escrow by jurisdictional court, local judge, to discharge any claim having come forth for any reason. Judge named by surviving Director or Directors of Corporation. If none, then yo exempt Church Charities by Judge. * Boat Donated, formerly known as "Independent"; Artifacts valuable or otherwise; writings, letters, documents, agreements, any legal papers, Books, ships furnishings or movable household goods so deemed to be given all to St. Michael Chapel W. *244 P.Bch., Fl. 33405, U.S.A. and if ever needed to Saint Catherines Monastery at Mount Sinai, Sinai Peninsular, Isreal-Egypt, Middle East, which will be delivered by Haralambos F. Panagakos, physically, One & himself, (2) with aid, to this Greek Orthodox Autocephaleous, Christian Church, only unto itself at Mtl Sinai. * Property now donated to be discharged as described on new corrective warranty deed, Feb. 1, 19985. If no named survivors as stated, deed to St. Catherines Monastery at Mt. Sinai and no other." [Reproduced literally.] Petitioner requested a hearing with respondent's Regional Director of Appeals. On November 6, 1984, petitioner informed respondent that it "is not a church." * * * It is a religious educational institution, using its museum as a vehicle to propogate the purposes of the organization. The purposes of the organization are as set forth in its By-Laws, a copy of which was previously submitted. In the past, some religious activity had been carried out, however, that was discontinued in 1983. Please see enclosed copy of a resolution adopted by the Directors on October 11, 1984. b. St. Michaels Chapel - Elijah Ministry, is a church. This church *245 was established on March 17, 1983. It is a separate entity and not a part of Athenagoras, although it supports the aims and goals of that organization. St. Michaels Chapel - Elijah Ministry, has applied for church affiliation with the Full Gospel Fellowship of Churches and Ministers International, which has a Fellowship group ruling. Please see enclosed copy of the St. Michaels Chapel - Elijah Ministry Declaration of congregational organization as well as a copy of application for church affiliation. The administrative record is replete with various newspaper articles about Mr. Bouchlas, correspondence and other memoranda authored by Mr. Bouchlas. The subjects of these documents range: salvage operations in the Bahamas, the religious beliefs of Mr. Bouchlas, international relations with the Soviet Union, draft of a novel written by Mr. Bouchlas. On May 6, 1986, petitioner was advised by respondent that it would not be recognized as an exempt organization because it did not meet the "organizational test" contained in section 501(c)(3) because (1) the articles of incorporation do not contain a proper dissolution provision and (2) the organization serves the interest of Mr. Bouchlas *246 and his family. Respondent also concluded that petitioner had failed to establish that it satisfied the "operational" test. Petitioner filed a petition with this Court on June 9, 1986. That petition to a great extent was unintelligible. The petition was styled "Athenagoras I Christian Union of the World, Inc. and Robert Bouchlas." Respondent timely filed motions for a more definite statement and to change the caption by striking Robert Bouchlas as a petitioner. We granted both motions. Robert Bouchlas then moved to join in the proceedings and that motion was denied. On October 14, 1986, petitioner filed an amended petition. Respondent filed an answer. The administrative record was filed and briefs of the parties were submitted. OPINION Section 7428(a) provides, inter alia, that in the case of an actual controversy involving respondent's denial of recognition of an "initial qualification * * * of an organization * * * described in section 501(c)(3) which is exempt from tax under 501(a)" upon the filing of a petition the "Tax Court * * * may make a declaration with respect to *247 such initial qualification * * * ." In Houston Lawyer Referral Service v. Commissioner,69 T.C. 570 (1978), we reviewed the scope of our review of respondent's action and held (supra at 573): In the final analysis, this Court's function under section 7428 is to resolve disputes as to the legal issues raised by the Internal Revenue Service's denial of an exemption ruling on the basis of uninvestigated statements of facts submitted by the taxpayer in its ruling request and related papers.
Under our rules, our disposition will ordinarily be made on the administrative record, and petitioner has the burden of proof to show error in the grounds set forth in respondent's determination. Rules 217(a) and 217(c)(2)(i); Basic Bible Church v. Commissioner,74 T.C. 846, 854-855 (1980), affd. sub nom. Granzow v. Commissioner,739 F.2d 265 (7th Cir. 1984). *248 Section 501(a) provides that an organization described in section 501(c) shall be exempt from taxation. Section 501(c)(3), upon which the claimed exemption here is based, describes, inter alia, corporation "organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary or educational purposes * * * no part of the net earnings of which inures to the benefit of ay private shareholder * * * ." The regulations under section 501(c)(3) must be "organized and operated" for the purposes listed above and must serve "public rather than private interest," and "it is necessary for an organization to establish that it is not organized or operated for the benefit of private interests such as designated individuals, the creator or his family * * * ." Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. Thus, essentially there are two tests: petitioner must establish that it is organized and operated for exempt purposes. Bubbling Well Church of Universal Love, Inc. v. Commissioner,74 T.C. 531, 534 (1980), affd. 670 F.2d 104 (9th Cir. 1981). As an initial matter, it is totally unclear to *249 us what type of exempt purpose petitioner claims. At first, it appears that petitioner claimed to be a religious organization; in other documents, however, petitioner rejected that characterization and indicated it was an educational institution. The amended petition states: The petitioner hereby states it is a "Religious Institution", as stated, and operates as an educational, non profit corporation, Press publishing company, and Ecclesia Christian Biblical activitys. [Reproduced literally.] While we have strong reservations concerning the nature of petitioner, we do not believe that is is necessary (or, perhaps, possible) to clarify and classify petitioner's activities. Respondent determined that petitioner was neither organized nor operated as a tax exempt organization. We do not find that respondent's determination as to these tests was incorrect. ORGANIZATION Section 1.501(c)(3)-1(b)(4), Income Tax Regs., provides: (4) Distribution of assets on dissolution. An organization is not organized exclusively for one or more exempt purposes unless *250 its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, be reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. * * *
While we are uncertain as to the legal effect of the various purported amendments to petitioner's Articles of Incorporation, if we give effect to the last amendment, upon which petitioner relies, a substantial part of the assets of petitioner, upon dissolution, would be turned over by Robert Bouchlas to "St Michael Chapel: W.P.Bch., Fl." and "Saint Catherines Monastery at Mt. Sinai, Sinai Peninsular, Israel-Egypt, Middle East." The record contains little information concerning St. Michael Chapel. On November 5, 1984 Mr. Bouchlas wrote to respondent (Ex. AJ): b. St. Michaels *251 Chapel - Elijah Ministry, is a church. This church was established on March 17, 1983. It is a separate entity and not a part of Athenagoras, although it supports the aims and goals of that organization. St. Michaels Chapel - Elijah Ministry, has applied for church affiliation with the Full Gospel Fellowship of Churches and Ministers International, which has a Fellowship group ruling. Please see enclosed copy of the St. Michaels Chapel - Elijah Ministry Declaration of congregational organization as well as a copy of application for church affiliation. [Reproduced literally.]
The address for St. Michael Chapel is 4414 Washington Road, West Palm Beach, Florida. That is the same address given for petitioner and Mr. Bouchlas. All records of St. Michael Chapel appear to have been created and/or executed by Mr. Bouchlas. There is no information concerning St. Catherine's Chapel. Thus, as far as we can determine, if petitioner were dissolved, its assets would be controlled by Mr. Bouchlas without any meaningful restrictions. Respondent concluded that these entities did not satisfy the dissolution requirements of section 1.501(c)(3)-1(b)(4), Income Tax Regs. *252 There is nothing in the administrative record that would lead us to a different conclusion. Compare Stephenson v. Commissioner,79 T.C. 995, 1002-1003 (1982), affd. 748 F.2d 331 (6th Cir. 1984). OPERATIONAL TEST For our purposes here, the essence of the so-called operational test is whether petitioner serves a public rather than a private interest. Sec. 1.501(c)(3)-1(d)(1)(ii), Income Tax Regs. We have examined the various documents submitted by petitioner that are in the administrative record. It is quite clear that petitioner was created to serve the private interest of Robert Bouchlas. Indeed, this is the only explanation for the vacillating nature of petitioner's stated activities. As the interest of Mr. Bouchlas changed, so changed the nature of petitioner's activities. These interests ranged from salvage operations in the Bahamas to international politics. While there may be some cosmic relationship between these interests and public interests, that relationship is too far attenuated to satisfy the public-interest *253 requirement of section 501(c)(3). Moreover, it is quite clear that the use of petitioner's assets, primarily the house on 4414 Washington Road, inured to the benefit of Mr. Bouchlas and his wife. Decision will be entered for the respondent.
Footnotes
1. This case was assigned pursuant to the provisions of section 7456(d) (redesignated as section 7443A by the Tax Reform Act of 1986, Pub. L. 99-514, section 1556, 100 Stat. 2755) and Rule 180 et seq. ↩
2. All statutory references are to the Internal Revenue Code of 1954, as amended, and as in effect during the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure, except as otherwise provided. ↩
3. Of passing interest, the 1979 deed provided that the remainder, after the life estates, would go to the specified heirs of Robert Bouchlas. They did not join in this deed. Also the 1979 deed provided a life estate for Mrs. Bouchlas, and she did not join in the so-called corrective deed. At some time these problems must be unraveled, but we need not do so here.↩