JERRY L. MUSTAIN AND LYNDA J. MUSTAIN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Mustain v. Commissioner
Docket No. 15350-80.
United States Tax Court
T.C. Memo 1982-670; 1982 Tax Ct. Memo LEXIS 69; 45 T.C.M. (CCH) 153; T.C.M. (RIA) 82670; November 22, 1982. Joe A. Izen, Jr., for the petitioners. David W. Johnson, for the respondent. FEATHERSTON
MEMORANDUM FINDINGS OF FACT AND OPINION FEATHERSTON, Judge: Respondent determined a deficiency in the amount of $3,511 in petitioners' Federal income tax for 1978 and an addition to tax in the amount of $175.55 under section 6653(a). [1] The issues for decision are as follows: 1. Whether petitioners are entitled to charitable contribution deductions pursuant to section 170 for donations allegedly made to the Universal Church of Divine Equality and the Universal Church of Elasia for 1978; and 2. Whether petitioners' underpayments of tax for 1978 were due to negligence or intentional disregard of the law within the meaning of section 6653(a). At the time the petition was filed, petitioners Jerry L. Mustain and Lynda J. Mustain, husband and wife, were legal residents of Alvin, Texas. They filed their 1978 *71 joint Federal income tax return with the Internal Revenue Service Center, Austin, Texas. Petitioner Jerry L. Mustain (hereinafter Jerry) was employed in 1978 by Atlantic Richfield Co. as a pumper, and petitioner Lynda J. Mustain (Lynda) was employed as a school bus driver and as a store employee. They reported 1978 wages in the total amount of $27,447 and interest income of $1,794. On their 1978 joint Federal income tax return, they claimed a charitable contribution deduction of $950 identified as "Cash contributions for which you have receipts, cancelled checks or other written evidence" and $13,730 identified as "Other than cash." The deductions were disallowed on the ground that the claimed amounts were not contributions within the meaning of section 170. The alleged $950 cash contribution consisted in part of a $700 check delivered to Wayne Tharp (Tharp) who was described by petitioners variously as a tax advisor, minister, Doctor of Divinity, bishop, accountant, and return preparer. In addition, Lynda testified that she paid Tharp another $250, but she did not document this payment in any way. The check was made payable to the Universal Church of Elasia. The trial record *72 contains no information on that organization other than the fact that it was located at Tharp's residence. Petitioners obtained a "charter" stating that their newly created Universal Church of Divine Equality is a congregation of Universal Life Church, Inc., Modesto, California. They also obtained documents, including forms for bills of sale and quitclaim deeds, from Tharp. By these documents, petitioners purported to transfer to their Universal Church of Divine Equality title to all of their real and personal property, consisting of two automobiles, their household furnishings and appliances, including five color television sets, a deep freezer, microwave oven, refrigerator, electric stove, washer and dryer, and their residence plus other real estate. These purported transfers compose the alleged "Other than cash" contributions deducted on their 1978 returns. Under section 170(a) and (c), [2] deductions are allowable for contributions to or for the use of a "corporation, trust, or community chest, fund, or foundation" which is "organized and operated" exclusively for religious purposes *73 provided that, among other requirements, none of its earnings inure to the benefit of a private individual. Petitioners have the burden of proving that the contributions which they claimed as 1978 deductions meet the requirements of this section.We find that they have not carried their burden. *74 The record contains no information whatever on the purposes for which the Universal Church of Elasia was organized or operated. Nor does it contain any evidence bearing on whether any part of its earnings inured to the benefit of a private individual. It matters not, therefore, whether petitioners transferred $700 or $950 to that organization. Petitioners have not shown that it is an organization described in section 170(a) and (c). The same conclusion is required with respect to the Universal Church of Divine Equality. Petitioners have shown only that they transferred bare legal title of their property to that organization. They continued to live in their purportedly transferred house, to use their household furnishing and appliances, and to drive their automobiles for their own personal purposes. No restrictions were placed on their use of any of the assets. No completed gifts of those properties were, therefore, made and for that reason petitioners are not entitled to deductions for the transfers. Moreover, because petitioners continued to use the transferred property, we think the "earnings" of the Universal Church of Divine Equality inured to their benefit and thereby *75 disqualified the organization on that ground. [3]
In a sense, the prohibition against private inurement of net earnings appears to be redundant to the requirement that an organization be organized and operated exclusively for exempt purposes. Unitary Mission Church v. Commissioner,74 T.C. 507, 512, fn. 7 (1980), affd. 647 F.2d 163 (2d Cir. 1981); Western Catholic Church v. Commissioner,73 T.C. 196, 209, fn. 27 (1979), *76 affd. 631 F.2d 736 (5th Cir. 1980). Apart from their continued use of the transferred property, however, petitioners have not shown that their Universal Church of Divine Equality was organized and operated exclusively for religious purposes within the meaning of section 170(c)(2). Lynda testified that the only doctrine of their church was "that each man was supposed to be able to do what he felt in his own heart was right, but it's between him and God." No other information on its character as a religious organization was presented. The "church" was located in petitioners' residence. Lynda testified that she helped others in need but she also testified that the "good deeds" she performed after the organization was created were no different from those performed in prior years. Not only did petitioners continue to use the transferred assets for personal purposes, they failed to make any provision to dedicate the transferred assets to an exempt purpose. It follows that the organization does not meet the statutory test. Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. 603 F.2d 211 (2d Cir. 1979). [4]
*77 There is no merit in the argument that petitioners' Universal Church of Divine Equality is entitled to exemption merely because it was "chartered" by the Universal Life Church of Modesto, California. It is true that the Modesto organization was held to be exempt from taxation in Universal Life Church, Inc. v. United States,372 F.Supp. 770 (E.D. Cal. 1974), and based on that holding the Commissioner of Internal Revenue ruled that the Modesto organization is exempt under section 501(c)(3). That was not, however, a group exemption. Each organization chartered by the Modesto body must be established in its own right to be entitled to exemption and to qualify for deductible contributions. [5]
*78 Petitioner offered in evidence a document signed by Bishop R. E. Imbeau, Ph.D., Vice-President, Universal Life Church, Inc., Modesto, California, addressed to petitioners, and headed "Annual Receipt of Contributions for the Year 1978." Neither Imbeau nor anyone else from the Modesto organization testified as a witness. The document purports to acknowledge contributions "in the aggregate amount of $14,000." Lynda's testimony showed, however, that petitioners reported to the Modesto organization the amount of their alleged contributions to their Universal Church of Divine Equality, and then received the receipt from the Modesto organization. No contributions were made to the Modesto organization. The "receipt" was not admitted in evidence because of its hearsay character. [6]
*79 We are left with the firm conviction that petitioners' Universal Church of Divine Equality was organized and used predominantly for personal purposes and that any religious activities connected with it were of minimal significance. It did not meet the section 170(a) and (c) requirements. Cf. Basic Bible Church v. Commissioner,74 T.C. 846 (1980); Bubbling Well Church v. Commissioner,74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981); Unitary Mission Church v. Commissioner,74 T.C. 507 (1980), affd. 647 F.2d 163 (2d Cir. 1981). Petitioners also contend, apparently in the alternative, that the $950 shown on their income tax return as a cash contribution, if not deductible as a contribution to the Universal Church of Elasia, is deductible as the cost of preparing their income tax returns, apparently relying upon section 212(3). That section allows as a deduction "all the ordinary and necessary expenses paid or incurred during the taxable year * * * in connection with the determination, collection, or refund of any tax." It permits a taxpayer to deduct expenses "paid or incurred in connection *80 with the preparation of his tax returns." Sec. 1.212-1(1), Income Tax Regs. The evidence on this alternative contention is wholly unsatisfactory. Tharp notarized the bills of sale transferring to the Universal Church of Divine Equality the automobiles and "all personal property, personal effects, clothing, any personal property of commercial value, any and all furniture and household furnishings now and in the future belonging to" petitioners as well as the quitclaim deed transferring their real estate. All of those documents are dated in November 1978. To substantiate the $950 deduction, a check in the amount of $700, dated December 5, 1978, and payable to the Universal Church of Elasia was introduced in evidence. The fact of that check shows, however, that it was given as a "Donation." The record contains no explanation as to why, if the $950 was a return preparation fee, it was documented, at least in part, as a donation. We find it strange that, if petitioners actually paid Tharp for assistance in preparing their 1978 return, he prepared the return showing the amount paid to him as a charitable contribution deduction. Moreover, we are not convinced that petitioners *81 would have paid an income tax preparation fee on December 5, 1978, prior to the close of the taxable year. [7]
Finally, as to the addition to tax, section 6653(a) provides that if any part of an underpayment of tax is due to negligence or intentional disregard of rules and regulations, a 5-percent addition to tax may be imposed. We think it quite inconceivable that anyone as intelligent as petitioners could have thought in good faith that the income tax law could be circumvented by taking the steps that they took. We recognize the possibility that petitioners were duped by Tharp, but an ordinary prudent person would have consulted competent counsel before accepting his advice in good faith. There is simply no credible evidence to show petitioners used reasonable care in preparing their 1978 income tax return--that the underpayment was not due to negligence or intentional disregard of the law. The addition to tax must, therefore, be sustained. To reflect the foregoing, Decision will be entered for the respondent. *82 Footnotes
1. All section references are to the Internal Revenue Code of 1954, as in effect during the tax year in issue, unless otherwise noted.↩
2. SEC. 170. CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. A charitable contribution shall be allowable as a deduction only if verified under regulations prescribed by the Secretary. (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- (1) A State, a possession of the United States, or any political subdivision of any of the foregoing, or the United States or the District of Columbia, but only if the contribution or gift is made for exclusively public purposes. (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes, or to foster national or international amateur sports competition (but only if no part of its activities involve the provision of athletic facilities or equipment), or for the prevention of cruelty to children or animals; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual;↩
3. Technically, a church ordinarily does not have "earnings" in the usual sense. It is recognized, however, that the term "earnings" as used in secs. 170(c)(2) and 501(c)(3) is not limited to the distribution of dividends but may include economic benefits derived from contributions. See Founding Church of Scientology v. United States,188 Ct. Cl. 490, 497, 412 F.2d 1197, 1200 (1969) and cited cases; Unitary Mission Church v. Commissioner,74 T.C. 507, 512-513 (1980), affd. 647 F.2d 163 (2d Cir. 1981); Bubbling Well Church v. Commissioner,74 T.C. 531 (1980), affd. 670 F.2d 104↩ (9th Cir. 1981).
4. Sec. 1.501(c)(3)-1(b)(4), Income Tax Regs., provides: (4) Distribution of assets on dissolution. An organization is not organized exclusively for one or more exempt purposes unless its assets are dedicated to an exempt purpose. An organization's assets will be considered dedicated to an exempt purpose, for example, if, upon dissolution, such assets would, by reason of a provision in the organization's articles or by operation of law, be distributed for one or more exempt purposes, or to the Federal government, or to a State or local government, for a public purpose, or would be distributed by a court to another organization to be used in such manner as in the judgment of the court will best accomplish the general purposes for which the dissolved organization was organized. However, an organization does not meet the organizational test if its articles or the law of the State in which it was created provide that its assets would, upon dissolution, be distributed to its members or shareholders. It has been stated that "to the extent that a regulation promulgated under Section 501 is designed to effectuate the common Congressional purpose [of both section 170 and section 501], it may afford some general guidance in the proper interpretation of Section 170." Morey v. Riddell,205 F.Supp. 918, 920 (S.D. Cal. 1962); Calvin K. of Oakknoll v. Commissioner,69 T.C. 770, 773 (1978), affd. 603 F.2d 211↩ (2d Cir. 1979).
5. In Riemers v. Commissioner,T.C. Memo. 1981-456, this Court stated: In Universal Life Church, Inc. v. United States,372 F. Supp. 770 (E.D. Cal. 1974), the Universal Life Church, Inc. of Modesto, California was held to be exempt under section 501(c)(3). However, that holding applied only to the individual parent church there in issue; it was not a group exemption * * * Therefore, the Valhalla Universal Life Church is not included in the exemption granted to the Universal Life Church, Inc. of Modesto, California, and its status as an organization to which deductible contributions can be made must be determined separately. See also Hall v. Commissioner,T.C. Memo. 1982-337; Schilberg v. Commissioner,T.C. Memo. 1982-336; Kellman v. Commissioner,T.C. Memo. 1981-615; Brown v. Commissioner,T.C. Memo. 1980-553; United States v. Toy National Bank, an unreported case ( N.D. Iowa 1979, 43 AFTR 2d 79↩-954, 79-1 USTC par. 9344).
6. Lynda testified: THE COURT: Let me ask you--do I understand the facts to be that, according to your testimony, you have made contributions to your local church. THE WITNESS: Yes, sir. THE COURT: And you have prepared quarterly reports of the amount of those contributions. THE WITNESS: Yes, sir. THE COURT: And you have simply sent those quarterly reports in to Modesto. THE WITNESS: Yes, sir. THE COURT: And then Modesto has summarized the reports, and the document which is now offered in evidence simply is a summary of what you have sent the church in Modesto. THE WITNESS: Yes, sir. The witness admitted that she had no specific record or recollection of any contributions to the Modesto organization in 1978.↩
7. In general, fees for services in rearranging title to their property would not be deductible under sec. 212. Luman v. Commissioner,↩ 79 T.C.     (1982).