WILLIAM and ANNE MORIARTY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Moriarty Commissioner
Docket No. 19915-83.
United States Tax Court
T.C. Memo 1984-539; 1984 Tax Ct. Memo LEXIS 129; 48 T.C.M. (CCH) 1345; T.C.M. (RIA) 84539; October 9, 1984. *129 Held: Petitioners failed to establish that they made any charitable contributions to the Universal Life Church, Inc., of Modesto, California, or that the contributions they made to their own Universal Life Church "congregations" qualified as charitable contributions. Held further: Petitioners are liable for additions to tax under sec. 6653(a), and damages are awarded to the United States under sec. 6673. Gary J. Joslin, for the petitioners. Julie E. *130 Tamuleviz, for the respondent. SWIFT MEMORANDUM FINDINGS OF FACT AND OPINION SWIFT, Judge: By statutory notice of deficiency dated April 15, 1983, respondent determined deficiencies in petitioners' Federal income tax liabilities and additions to tax as follows: Additions to Tax
Year
Deficiency
I.R.C. Section 6653(a) [1]
1979
$3,642.00
$182.10
1980
4,889.84
244.49
Trial of this case was held in Salt Lake City, Utah, on June 12, 1984. Also pending before the Court is respondent's Motion for Summary Judgment or Alternatively To Dismiss on Failure to Adduce Evidence At Trial, filed pursuant to Rules 121 and 149(b). The issues for decision are whether petitioners are entitled to deduct alleged charitable contributions, whether petitioners are liable for the additions to tax set forth above, whether damages should be awarded to the United States pursuant to section 6673, and whether respondent's *131 alternative motion for summary judgment or dismissal should be granted. FINDINGS OF FACT Some of the facts have been stipulated and are so found. Petitioners William and Anne Moriarty are husband and wife and resided in Sandy, Utah, when the petition herein was filed. Petitioners timely filed their Federal income tax returns for 1979 and 1980. On their 1979 and 1980 Federal income tax returns, petitioners claimed deductions for charitable contributions made to the Universal Life Church, Inc., of Modesto, California (ULC Modesto), in the amounts of $12,200 and $11,750 for 1979 and 1980, respectively. Respondent disallowed the entire deduction for each year and issued its notice of deficiency. Petitioners timely filed their petition with respect thereto on July 12, 1983. At the trial petitioners refused to testify, invoking their Fifth Amendment rights against self-incrimination. Petitioners called as their sole witness Bishop Robert E. Imbeau, Vice President and member of the Board of Directors of ULC Modesto. Petitioners also submitted as evidence certain receipts for contributions allegedly made by them to ULC Modesto and to various "local congregations" of *132 the Universal Life Church (local ULCs).One receipt, issued by local ULC Charter No. 25,829 and signed by petitioner Anne M. Moriarty, as the secretary/treasurer of the local ULC, reflected a $12,000 "contribution" by petitioners in 1979 to local ULC Charter No. 25,829. Two other receipts, issued by ULC Modesto and signed by Mr. Imbeau, reflected "contributions" of $12,200 and $11,750 and 1979 and 1980, respectively, by petitioners to ULC Modesto. Those receipts were issued by ULC Modesto without any reasonable procedure for verification that the contributions were actually made. Respondent submitted as evidence photocopies of bank checks that petitioners wrote to various local ULCs, namely "Church of the First Light," Kilpatrick Street Universal Life Church," "Church of the Hills," "Universal Life Church #25,829," and "Universal Life Church." Those checks reflect payments totalling $12,200 in 1979 and $11,750 in 1980. The photocopies indicate that each check was endorsed by a local ULC, principally local ULC Charter No. 25,829, and was deposited in the local ULC's account. [2] There is no evidence in the record with respect to how such "contributions" were expended *133 by the local ULCs. Prior to trial, petitioners resisted all attempts by respondent to discover relevant information concerning the financial activities of the various local ULCs to which petitioners allegedly made contributions. Specifically, petitioners refused to produce any documents with respect to the use by local ULCs of the amounts "contributed" by petitioners in 1979 and 1980, and petitioners attempted to excuse their noncompliance with the requests for production of documents by asserting that the records were in the possession of ULC Modesto. In further explanation, petitioners submitted a copy of a letter to them dated March 13, 1984 from ULC Modesto containing the following edict: You are hereby instructed not to comply with the request for production *134 of records from Mr. J. A. Lopata, Attorney for the Internal Revenue Service, for the Records and accounts of the Universal Life Church, Inc., that may inadvertently be in your possession. The records requested by respondent pertained to the financial operations of the local ULCs and not to ULC Modesto and the letter by ULC Modesto can only be viewed as a blatant attempt to preclude relevant evidence from being made available to this Court. At the close of trial, respondent filed his written motion for damages of $5,000 and orally moved for summary judgment. Respondent thereafter filed with the Court a written motion for summary judgment or, in the alternative, dismissal on June 28, 1984. Petitioners filed a response to the motion for damages but did not file a response to the motion for summary judgment or dismissal. OPINION Generally, section 170 [3] allows deductions for charitable contributions provided the taxpayer proves that he made an unconditional gift to a qualified entity. Davis v. Commissioner,81 T.C. 806, 817 (1983). A qualified entity, among other requirements, is one that is organized and operated exclusively for religious or charitable *135 purposes, the net earnings of which do not inure to the personal benefit of any private individual. Section 170(c)(2). Therefore, in order to prevail, petitioners must establish that their "contributions" were actually made to ULC Modesto, which, as to the years in suit, apparently enjoyed tax exempt status. [4]Universal Life Church, Inc v. United States,372 F. Supp. 770 (E.D. Calif. 1974). In the alternative, petitioners must prove that their payments to the local ULCs qualify as deductions under section 170 on the grounds that the local ULCs were organized and operated exclusively for religious purposes and that no part of the local ULCs' net earnings inured to petitioners' personal benefit. *136 Petitioners apparently do not contend that the specific Federal tax-exempt status previously granted to ULC Modesto in Universal Life Church, Inc. v. United States,supra, constitutes a group exemption that includes all local ULCs. [5] Rather, petitioners contend that ULC Modesto and the local ULCs are "one church;" that any charitable contributions made to local ULCs are actually made to ULC Modesto and are thus deductible. Respondent apparently concedes that ULC Modesto in 1979 and 1980 was a qualifying entity as described in section 170(C)(2), and that contributions to it were deductible. See Universal Life Church, supra.Respondent contends, however, that petitioners made no payments to ULC Modesto, and that the payments petitioners made to local ULCs were not "charitable contributions" as defined by section 170(c). We agree with respondent on both points. *137 Petitioners rely on the testimony of Mr. Robert E. Imbeau, an officer of ULC Modesto, in order to establish that the funds they transferred to local ULCs were, in actuality, charitable contributions to ULC Modesto. Mr. Imbeau testified in extremely vague and conclusory terms that every local ULC is part of ULC Modesto. No documentation supporting petitioners' contention on this point was offered in evidence. We reject Mr. Imbeau's testimony and find that local ULCs are separate and distinct taxable entities that would have to qualify for a Federal tax-exemption on their own accord. Basic Bible Church v. Commissioner,74 T.C. 846, 855-856 (1980); Universal Life Church, Inc. (Full Circle) v. Commissioner, 83 T.C.    , (p. 7 slip opinion filed Aug. 30, 1984). We will not allow local ULCs to reduce the taxable income of their members through spurious "contributions" using ULC Modesto's then-current tax-exempt status. Petitioners' cancelled bank checks clearly establish that each "contribution" made by petitioners was deposited in the bank account of a local ULC, principally local ULC Charter No. 25,829 (which received $23,750 of the $23,950 allegedly contributed *138 and of which petitionerAnne Moriarty was secretary/treasurer). There is no credible evidence to suggest that any portion of these funds was thereafter transferred to ULC Modesto. Petitioners assert that the receipts issued by ULC Modesto substantiate petitioners' alleged contributions to ULC Modesto. We do not agree. Mr. Imbeau acknowledged that local ULCs exercise practical autonomy to disburse funds received by local ULCs. The local ULCs report to ULC Modesto in summary fashion that "contributions" were made by certain individuals to local ULCs, and based solely on those unverified and summary reports, Mr. Imbeau or other officer, issue receipts on behalf of ULC Modesto, for such "contributions." Mr. Imbeau also conceded that the receipts issued by ULC Modesto do not mean that the funds reported thereon were physically deposited to the account of ULC Modesto. See Mustain v. Commissioner,T.C. Memo. 1982-670 at fn. 6 (45 T.C.M. 153, 155, 51 P-H Memo T.C. par. 82,670, at 2968-82), for a further explanation of ULC Modesto's practice of issuing receipts to local ULCs. With respect specifically to petitioners herein, Mr. Imbeau stated that he did not *139 know if any of the $23,950 petitioners allegedly contributed during the two years in controversy were ever physically received by ULC Modesto. Although Mr. Imbeau testified generally that petitioners had made contributions totalling $23,950 to ULC Modesto, the evidence clearly establishes that his testimony was not based upon actual knowledge that petitioners had transferred funds from the local ULCs to ULC Modesto. In sum, we are convinced that petitioners' payments to various local ULCs did not constitute contributions to ULC Modesto. Even assuming that petitioners made "contributions" to ULC Modesto, we would still disallow the deductions because petitioners have not established that the net earnings of the recipient organization did not inure to petitioners' personal benefit. Indeed, we are inclined to believe that there was in fact such personal benefit herein in light of the amount of the "contributions" in relation to petitioners' income, the fact that petitioner Anne Moriarty issued one of the receipts, the failure of petitioners to offer any reliable evidence to disprove the receipt of personal benefit from the funds "contributed," and the strong negative inference *140 we draw from petitioners' refusal to testify. See Bresler v. Commissioner,65 T.C. 182, 188 (1975); Wichita Terminal Elevator Co. v. Commissioner,6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Based upon that negative inference, we assume that petitioners' testimony would indicate that such funds, although initally transferred to local ULCs, were used by petitioners in some personal endeavor. We therefore sustain respondent's determination disallowing the deductions claimed in 1979 and 1980 for charitable contributions to ULC Modesto. Respondent also determined that petitioners were liable for additions to tax under section 6653(a) for negligence or intentional disregard of the rules and regulations of the Internal Revenue Service. This Court has repeatedly sustained the section 6653(a) addition in cases involving alleged charitable contributions to a "church" that used the funds for personal or family expenses. Davis v. Commissioner,supra at 820-821. [6] There is no evidence to suggest that petitioners' "contributions" were used by the local ULCs for any religious or charitable purpose. *141 We are satisfied that the negligence addition is fully justified in this case, and we sustain respondent on that issue. Respondent further moved this Court to award damages to the United States in the amount of $5,000 pursuant to section 6673. [7] The provisions of section 6673 allow damages not exceeding $5,000 to be awarded to the United States whenever it appears to this Court that theproceedings were instituted or maintained by a taxpayer primarily for delay or that the taxpayer's position in such proceedings was frivolous and groundless. *142 Petitioners assert that they were surprised by respondent's motion for damages when that motion was filed with the Court at trial, in spite of their acknowledgement that respondent had informed petitioners on two earlier occasions of his intent to move for damages. Petitioner also argues that in filing that motion, respondent has asserted a new matter at trial in the nature of an Amended Answer, contrary to the provisions of Rule 41 [8] or that respondent improperly joined a new issue, contrary to the provisions of Rule 38. [9]
*143 After athorough examination of the record herein, we reject petitioners' arguments. Petitioners were allowed 30 days from the date of trial in which to file an objection to respondent's motion for damages, and they did in fact file an objection. Petitioners also were given an opportunity in their written objection to explain why an evidentiary hearing on respondent's motion was appropriate. Petitioner's objection contains no such explanation. Moreover, according to the language of section 6673, damages may be awarded whenever it appears to this Court that the proceedings before it were instituted and maintained primarily for delay or are frivolous or groundless. This Court has properly awarded damages under section 6673 upon its own motion after trial, Sydnes v. Commissioner,74 T.C. 864, 872 (1980), affd. 647 F.2d 813 (8th Cir. 1981), [10] and we therefore reject petitioners' contention that respondent's motion is untimely. *144 We find this action to be frivolous and to have been instituted primarily to delay the payment of Federal income taxes. Indeed, it appears that petitioners' participation in the local ULCs was significantly related to an extensive scheme of tax avoidance. [11] As we have previously stated-- our tolerance for taxpayers who establish churches solely for tax-avoidance purposes is reaching a breaking point. Not only do these taxpayers use the pretext of a church to avoid paying their fair share of taxes, even when their brazen schemes are uncovered, many of them resort to the courts in a shameless attempt to vindicate themselves. ( Miedaner v. Commissioner,81 T.C. 272, 282 (1983))
Petitioners herein have abused the processes of this Court and wasted its resources, and we hereby grant respondent's motion for damages and award damages to the United States in the amount of $2,500 pursuant to section 6673.
*145 Respondent's alternative motion for summary judgment or dismissal is rendered moot in light of our disposition of this case on the merits. We therefore deny the motion. To reflect the foregoing, An appropriate order will be issued and decision entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in controversy, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Petitioners' bank checks demonstrate that the following amounts were deposited to the accounts of local ULCs as indicated: ↩
(1) $ 100
Charter No. 26,104 -
Church of the First Light
- 1979
(2) $ 100
Charter No. 26,105 -
Kilpatrick St. ULC
- 1979
(3) $12,000
Charter No. 25,829 -
Church of the Hills
- 1979
(4) $11,750
Charter No. 25,829 -
Church of the Hills
- 1980
3. SEC. 170.CHARITABLE, ETC., CONTRIBUTIONS AND GIFTS. (a) Allowance of Deduction.-- (1) General rule.--There shall be allowed as a deduction any charitable contribution (as defined in subsection (c)) payment of which is made within the taxable year. * * * (c) Charitable Contribution Defined.--For purposes of this section, the term "charitable contribution" means a contribution or gift to or for the use of-- * * * (2) A corporation, trust, or community chest, fund, or foundation-- (A) created or organized in the United States or in any possession thereof, or under the law of the United States, any State, the District of Columbia, or any possession of the United States; (B) organized and operated exclusively for religious, charitable, scientific, literary, or educational purposes * * *; (C) no part of the net earnings of which inures to the benefit of any private shareholder or individual; * * * ↩
4. We note that the Internal Revenue Code has recently withdrawn the tax-exempt status of the Universal Life Church in Modesto. See Internal Revenue Service News Release, SF 84-32, dated August 28, 1984.↩
5. Petitioners' failure to make that contention is not surprising in light of the numerous cases to the contrary. See e.g., Davis v. Commissioner,supra;Mendenhall v. Commissioner,T.C. Memo. 1983-491; Solanne v. Commissioner,T.C. Memo. 1983-67; Murphy v. Commissioner,T.C. Memo. 1983-59; Mustain v. Commissioner,T.C. Memo. 1982-670↩.
6. See also Murphy v. Commissioner,supra;Mustain v. Commissioner,supra;Harcourt v. Commissioner,T.C. Memo. 1982-621; Neil v. Commissioner,T.C. Memo. 1982-562, affd. without published opinion 730 F.2d 768↩ (9th Cir. 1984).
7. Section 6673 provides: Whenever it appears to the Tax Court that proceedings before it have been instituted or maintained by the taxpayer primarily for delay or that the taxpayer's position in such proceedings is frivolous or groundless, damages in an amount not in excess of $5,000 shall be awarded to the United States by the Tax Court in its decision. Damages so awarded shall be assessed at the same time as the deficiency and shall be paid upon notice and demand from the Secretary and shall be collected as a part of the tax.↩
8. Rule 41 provides in relevant part: (a) Amendments: A party may amend his pleading once as a matter of course at any time before a responsive pleading is served. If the pleading is one to which no responsive pleading is permitted and the case has not been placed on a trial calendar, he may so amend it any time within 30 days after it is served. Otherwise a party may amend his pleading only by leave of Court or by written consent of the adverse party; and leave shall be given freely when justice so requires. No amendment shall be allowed after expiration of the time for filing the petition, however, which would involve conferring jurisdiction on the Court over a matter which otherwise would not come within its jurisdiction under the petition as then on file. ↩
9. Rule 38 provides in relevant part: A case shall be deemed at issue upon the filing of the answer, unless a reply is required under Rule 37, in which event it shall be deemed at issue upon the filing of a reply or the entry of an order disposing of a motion under Rule 37(c) or the expiration of the period specified in Rule 37(c) in case the Commissioner fails to move. With respect to declaratory judgment actions and disclosure actions, see Rule 214 and 224 respectively.↩
10. See also Glew v. Commissioner,T.C. Memo. 1984-266; Ross v. Commissioner,T.C. Memo. 1984-27; Ballard v. Commissioner,T.C. Memo. 1982-56↩.
11. See Church of Ethereal Joy v. Commissioner,83 T.C. 20 (1984); Universal Life Church, Inc. (Full Circle) v. Commissioner, 83 T.C.     (slip opinion filed August 30, 1984); Hoskinson v. Commissioner,T.C. Memo. 1984-400; Clark v. Commissioner,T.C. Memo. 1984-326; Fowler v. Commissioner,T.C. Memo. 1984-311; Beasley v. Commissioner,T.C. Memo. 1984-304; Odd v. Commissioner,T.C. Memo. 1984-180; Johnson v. Commissioner,T.C. Memo. 1984-164; Rondinelli v. Commissioner,T.C. Memo. 1984-155; Leslie v. Commissioner,T.C. Memo. 1984-61; Schreiber v. Commissioner,T.C. Memo. 1983-754; Hawbaker v. Commissioner,T.C. Memo. 1983-665; Kiddie v. Commissioner,T.C. Memo. 1983-582; Owens v. Commissioner,T.C. Memo. 1982-671; Neil v. Commissioner,T.C. Memo. 1982-562; Harcourt v. Commissioner,T.C. Memo. 1982-621; Chumley v. Commissioner,T.C. Memo. 1982-473; Magin v. Commissioner,T.C. Memo. 1982-383; Solander v. Commissioner,T.C. Memo. 1982-161; Notter v. Commissioner,T.C. Memo. 1982-96; Daly v. Commissioner,T.C. Memo. 1982-59; Kellman v. Commissioner,T.C.Memo. 1981-615; Riemers v. Commissioner,T.C. Memo. 1981-456; Brown v. Commissioner,T.C. Memo. 1980-553; Ross v. Commissioner,T.C. Memo. 1980-284↩. Each of the cases cited in this footnote involved local "congregations" of the Universal Life Church and fabricated charitable contributions.