FLORENCE L. KLEIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

MINNA K. WEISSENBACH, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 4004, 4005, 6061, 6102, 10157. Promulgated March 26, 1927.

> In April, 1913, taxpayers by contract relinquished property rights in exchange for an annuity during their mother's life, the value of which in April, 1913, was stipulated. *Held*, that when actually received in each year the annual payment consists of the principal value of 1913 of such payment plus the discount, the latter being the gain taxable as income. The allocation would vary from year to year, the capital steadily getting smaller and the gain larger.

*Herbert G. Mayer, Esq.*, and *Abraham Meyer, Esq.*, for the petitioners.

*W. H. Lawder, Esq.*, for the respondent.

These proceedings, duly consolidated for hearing and disposition, involve deficiencies against Florence L. Klein of $400.56, $939.08, $1,021.68, and $776.36 for the calendar years 1917 to 1920, inclusive, and deficiencies against Minna K. Weissenbach of $150.00, $347.04, $801.67, $612.00, $360.42, $902.66, and $438.91 for the calendar years 1916 to 1922, inclusive. These deficiencies arise from the respondent's determination that an amount of $5,000 received annually by each petitioner under contract was income. The petitioners urged also that a portion of these taxes was barred by the statute of limitations.

### FINDINGS OF FACT.

The petitioners' father died testate on December 28, 1912. By his will, among other provisions, he left $75,000 to each of his daughters, Florence L. Klein, Minna K. Weissenbach, and Cora K. Ullman. He left to his two sons, Edwin M. and Irving M. Klein, and his

widow, Rosalinda Klein, all his stock in a corporation known as "L. Klein," one-third to each. The will was proved and admitted to record in open court in the Probate Court of Cook County, Illinois, on January 2, 1913. The net estate amounted to $2,868,442.39, and included among the assets was stock of L. Klein, the corporation, valued at $1,500,000.

The petitioners and their sister were not satisfied with the distribution provided by the will. On April 19, 1913, the following agreement was made by them with Irving M. and Edwin M. Klein:

MEMORANDUM OF AGREEMENT, Made at Chicago, Illinois, this 19th day of April, 1913, by and between IRVING M. KLEIN and EDWIN M. KLEIN, both of Chicago, Illinois, (hereinafter designated "First Parties"), and MINNA K. WEISSENBACH, CORA K. ULLMAN, and FLORENCE L. KLEIN, also of the City of Chicago, State of Illinois, (Hereinafter designated "Second Parties"), WITNESSETH:

WHEREAS, Leon Klein, of the City of Chicago, in the State of Illinois, departed this life on the 28th day of December, 1912, and left a Last Will and Testament, which Last Will and Testament has been duly admitted to probate, in the Probate Court of Cook County, in the State of Illinois; and

WHEREAS, all of the parties to this agreement, together with the widow of said Leon Klein, were named as beneficiaries under the Last Will and Testament of said Leon Klein, deceased; and,

WHEREAS, the parties hereto are desirous of making a division of that certain portion of the assets of the Estate devised to them under said Last Will and Testament, in a manner more equitable than is by the provisions of said Last Will provided; and,

WHEREAS, it is the desire of all of the parties to this agreement, that the said Second Parties do not attempt to enforce any rights which they may claim to have to any part or portion of said Estate of Leon Klein, not devised to them;

Now, THEREFORE, in consideration of One Dollar ($1.00) each to the other in hand paid, and in further consideration of the mutual love and affection of each of the parties hereto for the others, and in further consideration of the covenants and contracts hereinafter set out, said Parties hereto agree as follows:

That all that portion of the estate of said Leon Klein, deceased, devised under and by virtue of the terms of his Last Will and Testament to all of the parties to this agreement, notwithstanding any of the provisions of said Last Will and Testament, and without reference to the division so attempted to be made under and by virtue of said Last Will and Testament, shall be divided and distributed by the Executors of said Last Will and Testament of said Leon Klein, deceased, as follows:

1. Irving M. Klein, Four Hundred Ninety-nine (499) Shares of the capital stock of L. Klein, a corporation; also, One Hundred (100) shares of the capital stock of The 12th Street Store, a corporation.

2. Edwin M. Klein, Four Hundred Ninety-nine (499) Shares of the capital stock of L. Klein, a corporation; also, One Hundred (100) shares of the capital stock of The 12th Street Store, a corporation.

3. All cash on hand, stocks, bonds, mortgages and other evidences of indebtedness belonging to said estate and specifically set out in a Schedule hereto attached, marked Exhibit "A" and by specific reference thereto made a part

hereof, with the same force and effect as if the same were specifically incorporated herein, together with all the increments by virtue of dividends and other earnings thereon computed from the day of the death of said Leon Klein, up to and including the date of the distribution as contemplated herein, shall be divided between Minna K. Weissenbach, Cora K. Ullman and Florence L. Klein, second parties hereto, share and share alike, and in addition thereto, the said First Parties, jointly and severally agree to pay to each of said Second Parties the sum of Five Thousand Dollars ($5000.) per annum, in semi-annual installments, during the term of the natural life of Rosalinda Klein, widow of said Leon Klein, deceased, and Mother of the parties to this agreement. In the event of the death of any of said Second Parties prior to the death of said Rosalinda Klein, then, the sum which said deceased person would have received under and by virtue of the terms hereof, shall be paid to her respective heirs, administrators, executors, legal representatives or assigns, for and during the same period.

4. Said First Parties further agree that notwithstanding the distribution and setting apart to each of them of the One Hundred (100) shares of the capital stock of The Twelfth Street Store, a corporation, and which said stock is held by Rosalinda Klein, Irving N. Klein and Joseph Weissenbach, as Trustees under and by virtue of a certain Trust Agreement made and entered into of even date herewith, a copy of which said Trust Agreement being hereto attached, marked " Exhibit B " and made a part hereof, they will, contemporaneously with the execution of this Agreement, direct the said Trustees in writing to pay to each of said Second Parties, out of the dividends which they receive as such Trustees, which may be hereafter declared and paid on the said Two Hundred (200) Shares of the said stock of said The 12th Street Store, a corporation, the sum of Three Thousand Dollars ($3,000.00) per year, during the term of the natural life of said Rosalinda Klein, and that on and after the death of said Rosalinda Klein, said Trustees shall pay to said Second Parties, share and share alike, all dividends which may thereafter be declared and paid on the said Two Hundred (200) Shares of the capital stock of said The 12th Street Store, a corporation, up to and including March 3, 1929. In the event of the death of any of the said Second Parties prior to said March 3rd, 1929, then, the dividends which such deceased person would have received under the terms hereof, shall be paid to her heirs, executors, administrators or legal representatives.

5. Said First Parties further agree, that they and each of them will sell to said Second Parties, in equal proportions, all of the said capital stock of said The 12th Street Store which they will receive as their distributive shares under and by virtue of the terms of this agreement, at the election of said Second Parties, or any or either of them, at any time between the date hereof and the Third day of March, 1929, and if any of said parties exercise her or their option to purchase her or their proportionate share or shares of said capital stock, then, the price to be paid therefor by said party or parties exercising her or their option, shall be the book value of said capital stock, to be computed from the books of said The 12th Street Store, a corporation, at the date of the exercise of the option to purchase as herein given.

6. It is further understood and agreed, that nothing herein contained shall be construed to mean that the entire Two Hundred (200) shares of stock must be purchased hereunder, but any one of said Second Parties hereto may purchase one-third of said Two Hundred Shares within the time and at the price hereinabove specified. ·

7. All of the parties hereto agree, that they will upon reasonable request by the Executors of the Estate of Leon Klein, deceased, sign all necessary receipts

and vouchers for their distributive shares of the Estate of Leon Klein, deceased, pursuant to the terms of the Will of said Leon Klein, deceased, notwithstanding the distribution as herein agreed upon, and notwithstanding the agreement, herein, that the executors of said estate shall distribute said estate in accordance with the provisions of this agreement.

8. And all the parties hereto, in consideration of the covenants herein contained, do hereby mutually release each other from any and all claims of any kind or character which they or any of them may have by reason of any matter or thing whatsoever, and upon the distribution of the portion of the estate of Leon Klein, deceased, devised to the parties hereto, that the said Estate of Leon Klein, deceased, and the Executors thereof, shall be released from all claims and demands of whatsoever nature.

This agreement shall inure to and be binding upon the respective heirs, executors, administrators and assigns of the parties hereto.

The expectancy of life of Rosalinda Klein was, on April 19, 1913, fifteen years, one month and nine days, as stipulated, and the value on that date of each petitioner's right under the contract to receive $5,000 a year in semiannual installments during the life of Rosalinda Klein was $57,753.50, as stipulated.

The income-tax return of Florence L. Klein for 1917 was filed on March 27, 1918; the return for 1918 was filed on March 15, 1919; the return for 1919 was filed on March 15, 1920; and the return for 1920 was filed on March 15, 1921. The notice of deficiency for the years 1917, 1918, and 1919, was mailed to this petitioner on April 9, 1925. The additional taxes for the years 1917, 1918, and 1919, were assessed during September, 1921, and claims for abatement thereof have been filed. The notice of deficiency for the year 1920 was mailed on June 11, 1925.

The income-tax return of Minna K. Weissenbach for 1916 was filed on February 20, 1917; the return for 1917 was filed on April 29, 1918; the return for 1918 was filed on April 15, 1919; the return for 1919 was filed on March 15, 1920; the return for 1920 was filed on March 9, 1921; the return for 1921 was filed on March 15, 1922; the return for 1922 was filed on March 8, 1923. The notice of deficiency for the years 1916, 1917, 1918, and 1919, was mailed to this petitioner on April 9, 1925. The additional taxes for the years 1916, 1917, 1918, and 1919, were assessed during September, 1921, and claims for abatement thereof have been filed. The notice of deficiency for the years 1920 and 1921 was mailed on June 11, 1925. The notice of deficiency for the year 1922 was mailed October 27, 1925.

No distraint proceedings or proceedings in court have been instituted for the collection of any of the taxes for these years, nor has either of the petitioners filed a waiver as to these taxes with the Commissioner.

OPINION.

STERNHAGEN: The statement of facts, none of which is in dispute, presents two questions for decision; first, what portion, if any, of the $5,000 received each year by each petitioner is income; and, second, whether any part of these taxes is barred by the statute of limitations.

The respondent has included the entire amount of $5,000 received by each petitioner each year under the contract in her income. The petitioners contend that none of the amount is income. In our opinion the truth lies between.

When Leon Klein died he transferred *in praesenti* some part of his valuable estate to these petitioners. Whether this transfer was under the will or had been by descent in intestacy, its value was something which came to them by distribution of their father's estate and not by way of income. The will was proved and admitted to record on January 2, 1913, after which petitioners might have contested it, Ill. Pub. Acts, 1871-2, p. 775; ch. 148, par. 7, Callaghan's Ill. Stats. But something more than mere inequality of distribution would have been required to set it aside. *Donnan* v. *Donnan*, 236 Ill. 341; 86 N. E. 279; *McGrady* v. *McGrady*, 298 Ill. 129; 131 N. E. 251. Thereafter, by the contract of April 19, 1913, each petitioner converted this property into other property, thus realizing gain or loss of the difference between what under the contract she acquired and what she had from the estate (with proper adjustments for the value on March 1, 1913). These past values we are not concerned with, for presumably they were correctly taxed at that time. The significant fact now before us is that the value of what petitioners acquired by contract on April 19, 1913, became the capital basis for measuring any subsequent gain or loss in respect thereof.

The only amount in issue is the annual sum of $5,000. By stipulation, the value on April 19, 1913, of this annuity payable during the probable life of Rosalinda Klein is fixed at $57,753.50, which was to be paid to each in semi-annual installments for approximately fifteen years. It is not such a situation as arose in *Irwin* v. *Gavit*, 268 U. S. 161, where the annuity was received from a principal fund established under a will and without cost. See also *Heiner* v. *Beatty*, 17 Fed. (2d) 743, decided February 23, 1927. Here each annual amount of $5,000 represents in part a return of the cost of April 19, 1913, and in part a gain. The amount of the gain is therefore properly to be included in each petitioner's income each year, until the annual payments of principal aggregate $57,753.50.

The petitioners contend that no part of the annual payments of $5,000 is income until after they aggregate $57,753.50; and the argument is sought to be pointed by the fact that Rosalinda Klein's life

was necessarily uncertain and that her early death might have meant the failure of their realizing the $57,753.50. *Platt* v. *Bowers*, 13 Fed. (2d) 951; *Warner* v. *Walsh*, 15 Fed. (2d) 367, are cited. The argument is in our opinion unsound. The amount of $57,753.50 is presumably arrived at by discounting the annual payments to a present basis on April 19, 1913, and thus assuming that the prospect of receiving $5,000 in each future year was of a lower value in 1913. When actually received in each year the $5,000 consists of the principal value of 1913 of such payment, plus the discount, the latter being the gain taxable as income. The allocation would vary from year to year, the capital steadily getting smaller and the gain larger. This is readily computable by reference to discount tables and the parties are directed to present the allocation for each year.

The decision of *Platt* v. *Bowers*, *supra*, involves a contract the terms of which are not clearly stated, and the learned court seems to have regarded the present value of serial payments as equal to the face amount payable in the future. The decision in *Warner* v. *Walsh*, *supra*, is based upon the assumption that section 4 of the Revenue Act of 1916 and section 213 (b) (2) of the Revenue Act of 1918 require that all annuity payments under an insurance contract must be treated as capital until the purchase price is recovered. This seems to us to read into those statutes something not fairly within their terms. They provide only that so much of each payment as is a return of cost shall not be taxed as income; but this is a long way from saying that each payment *is* a return of cost in its entirety until cost is recovered. The statutes provide neither that the first payments are all income nor that they are all return of cost; but they indicate rather that each payment is partly one and partly the other, and that the income part is all that is to be included in gross income. This is consistent with the normal theory of purchased annuities, and seems to us to be fairer than to regard the first payments as wholly tax free and the latter payments as wholly taxable. The theory of apportionment is applicable to periodic payments just as it is to the ascertainment of gain in the sale of lots in a subdivided tract of land, of retail goods purchased in bulk, and other situations under the statute.

Since the foregoing decision would subject to tax a portion of each annual amount of $5,000 received from 1916 to 1922 in so far as they are involved in this proceeding, it is necessary to consider the petitioner's contention that the alleged deficiencies for the years up to and including 1919 must be disallowed because collection thereof is outlawed by the limitation provisions of the several statutes involved. Counsel for both parties were expressly requested to submit briefs on this question. At the request of both parties extension of time for filing such briefs was granted. Subsequently additional extensions

were refused because there had not been a sufficient show of diligence. At the appointed time the brief of counsel for petitioners was filed, but none has been filed in behalf of respondent. We thus have but the argument of one side to consider. Whether we are to assume that the respondent concedes that the statute bars the deficiencies or that he leaves the question to be investigated by the Board without the assistance of counsel is not clear. We reject the latter alternative. It is the duty of counsel to ascertain the considerations and authorities supporting one side or the other and of the Board to judge.

If the Board's refusal to grant further extensions of time is relied upon it should be said that periods fixed for procedure are to be taken seriously and there is no justification for waiting as in this case until the approximate time of expiration in reliance upon a further extension.

The argument of the petitioners in support of the view that the deficiencies for the years 1916, 1917, 1918, and 1919 are barred by the limitation provisions of the statute and therefore must be disallowed, is persuasive, and judgment should go in their favor for those years. We therefore so decide.

There is no deficiency for 1916, 1917, 1918, and 1919. For 1920, 1921, and 1922 the $5,000 annual payments should be allocated as between taxable income and nontaxable return of cost in accordance with the computation submitted by the parties as hereinbefore stated.

*Judgment will be entered on 20 days' notice, under Rule 50.*

ARUNDELL, MARQUETTE, SMITH, and TRUSSELL dissent.