UNITED LIBERTARIAN FELLOWSHIP, INC., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
United Libertarian Fellowship, Inc. v. Commissioner
Docket No. 12306-89X
United States Tax Court
T.C. Memo 1993-116; 1993 Tax Ct. Memo LEXIS 114; 65 T.C.M. (CCH) 2178; March 29, 1993, Filed *114 For petitioner: David H. Wolen (an officer). For respondent: Ann M. Murphy and Elaine L. Sierra. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined that petitioner does not qualify for exemption from Federal income tax under section 501(a) as an organization described in section 501(c)(3). [1] Petitioner challenges respondent's determination by bringing this action for declaratory judgment pursuant to section 7428. The sole issue for decision is whether petitioner satisfies the organizational and operational requirements for exemption pursuant to section 501(c)(3). The parties have submitted a stipulated administrative record. For purposes of this proceeding, we accept the facts contained in the administrative record as true and incorporate them herein by this reference. Rule 217(b)(1). Background
*115 United Libertarian Fellowship, Inc., (petitioner) was incorporated in 1975 by William C. White, Kathleen J. White, and C. Douglas Hoiles under the General Nonprofit Corporation Law of the State of California. The articles of incorporation state that petitioner was formed for the following purposes: (a) The specific and primary purpose is to maintain and operate a religious society for religious purposes. (b) The general purposes and powers are to have and exercise all rights and powers conferred on nonprofit corporations under the laws of California, including the power to contract, rent, buy or sell personal or real property, provided, however, that this corporation shall not, except to an insubstantial degree, engage in any activities or exercise any powers that are not in the furtherance of the primary purpose of this corporation. (c) No substantial part of the activities of this corporation shall consist of attempting to influence legislation, and the corporation shall not participate or intervene in any political campaign on behalf of any candidate for public office.
The articles of incorporation also provide that the management and control of the corporation's *116 affairs were to be conducted by a board of directors, which was to be initially composed of William C. White, Kathleen J. White, and C. Douglas Hoiles. The directors were to serve as such until selection of their successors. Petitioner's bylaws designate the governing body of petitioner as the board of elders, consisting of three elders who serve until resignation or termination of membership. The board of elders had the following rights and powers: (1) The right to designate successors; (2) the control and management of all the affairs of petitioner; and (3) the power to appoint the officers of petitioner, consisting of a president, a secretary/treasurer, and bishops. In February 1976, respondent determined that petitioner was tax exempt under section 501(c)(3) and recognized it as a "church" under section 170(b)(1)(A)(i). On June 29, 1977, respondent ruled that petitioner was not a "religious order" for Federal employment tax purposes. In 1981, some of petitioner's members came under criminal investigation by the Internal Revenue Service. On February 2, 1981, Special Agent Toral L. Solberg interviewed Mr. White, one of the elders, regarding another ULF member who was a bishop *117 in the organization. In the course of the interview, Special Agent Solberg learned that some bishops and some ordinary members of petitioner take a vow of poverty pursuant to which they contribute their income and assets to the church. One of the functions of a bishop is to determine how to use the assets which that bishop contributed. According to Mr. White, a bishop is responsible for submitting an annual report of the property he administers. Mr. White declined to show copies of these reports to Special Agent Solberg. According to Mr. White, the bishop whom Special Agent Solberg was investigating had contributed his personal residence to petitioner and used it as a parsonage. Special Agent Solberg also learned that the proceeds from the sale of the bishop's former residence subsequently were applied to a new residence when the bishop moved to the East Coast. On July 30, 1981, respondent, by written request, sought information from petitioner for the purpose of determining whether an examination of petitioner was necessary to resolve questions regarding its tax-exempt status. Respondent requested, among other things, information as to petitioner's specific method of record *118 keeping, as well as where the organization kept its books and records and where it maintained its bank accounts. In a statement dated September 1981, petitioner replied that it maintained no financial records, and that as an organization described in sections 6033(a)(2)(A)(i) and 501(c)(3), no record keeping guidelines were prescribed. In response to respondent's inquiry as to whether petitioner makes grants or loans, to whom, and in what amount, petitioner replied that it made loans when consistent with promoting the practice of its beliefs and that it currently had loans outstanding of $ 28,300. Respondent also asked whether petitioner had sold any property, and if so, to list the properties sold, date of sale, purchaser, and selling price. Petitioner's entire response to this question was "The Fellowship has sold three properties totalling 240,500." In response to respondent's request for petitioner's budget, including schedules of receipts, expenditures, assets, and liabilities for the current and following fiscal years, petitioner offered the following: receipts (yearly)
gifts, grants, donations, etc.
275,000
interest, dividends, etc.
5,000
280,000
expenditures (monthly)
12 Missions
20,000
contingency
3,333
23,333
(per month)
x    12
280,000
*119 In response to respondent's request that petitioner describe in detail all properties owned by the organization, how such properties were used, whether they generated income or were used by anyone other than the church, petitioner replied: "The Fellowship owns the following properties: Church headquarters and mission in California, retreat in Idaho, and mission in Florida. The properties are used solely by the Church to conduct its daily activities." On November 26, 1981, respondent sent a second request for information from petitioner. Respondent again asked for petitioner's specific method of record keeping, a list of specific records, and their locations. This time, petitioner replied that: "The Fellowship maintains bank accounts for receipts and disbursements, with the records of such accounts maintained at Church headquarters." Petitioner did provide, as requested, the names and addresses of the board of elders as follows: Will Barkley, 1220 Larnel Place, Los Altos, CA 94022 David H. Wolen, 1220 Larnel Place, Los Altos, CA 94022 William C. White, 1220 Larnel Place, Los Altos, CA 94022 In response to respondent's request for the addresses and descriptions of petitioner's *120 church headquarters and mission in California, retreat in Idaho, and mission in Florida, petitioner replied: a. ULF headquarters: a wood frame building used for worship, meetings, meditation, study, and administration. b. ULFIdaho retreat: a log cabin in a rural setting used for retreat, worship, study, meditation, and administration. c. ULF West coast mission: a wood frame building used for meetings, worship, meditation, study, and administration.
With the exception of the above information, petitioner refused to answer respondent's requests for information regarding the recipients of outstanding loans, names of ministers and amounts of parsonage they were paid, schedules of assets and liabilities, and the addresses of the properties listed as owned by petitioner in its previous response. On June 15, 1982, respondent sent petitioner notice that, based on the insufficiency of petitioner's responses, respondent determined it necessary to examine petitioner's books and religious activities. Beginning in April 1984, respondent's exempt organizations specialist made several attempts to schedule appointments to examine petitioner's books and activities. After rescheduling *121 five times in attempts to accommodate petitioner, respondent's agent met with petitioner's representative on September 17, 1984. Petitioner's representative did not produce any of petitioner's books or records for examination. On January 18, 1985, respondent issued a 30-day letter to petitioner notifying it of respondent's intention to revoke petitioner's exempt status and of petitioner's right to protest the proposed revocation. In May 1985, an appeals officer scheduled a hearing for June 11, 1985, as requested by petitioner's representative. Petitioner did not provide any further records or information to respondent or Appeals. On March 6, 1989, respondent issued a final adverse determination as to petitioner's exempt status under section 501(c)(3). Respondent's notice provides that the adverse determination is based upon petitioner's failure to establish that: (1) It operated exclusively for religious, charitable, or other exempt purposes; (2) it operated as a church as described in section 170(b)(1)(A)(i); and (3) that no part of its net earnings inured to the benefit of a private shareholder or individual. Discussion
Section 501 provides: (a) Exemption From Taxation. *122 -- An organization described in subsection (c) * * * shall be exempt from taxation under this subtitle unless such exemption is denied under section 502 or 503. * * * (c) List of Exempt Organizations. -- The following organizations are referred to in subsection (a): * * * (3) Corporations, and any community chest, fund, or foundation, organized and operated exclusively for religious, charitable, scientific, testing for public safety, literary, or educational purposes, * * * no part of the net earnings of which inures to the benefit of any private shareholder or individual, no substantial part of the activities of which is carrying on propaganda, or otherwise attempting, to influence legislation, * * * and which does not participate in, or intervene in * * * any political campaign on behalf of (or in opposition to) any candidate for public office.
An organization is therefore entitled to exempt status if it is both organized and operated exclusively for religious or charitable purposes. The regulations under section 501(c)(3) provide both an organizational and operational test for ex emption. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs. Failure to meet either the organizational *123 or the operational test negates exempt status. Sec. 1.501(c)(3)-1(a)(1), Income Tax Regs.
Respondent, in the notice of final adverse determination and on brief, focused entirely on petitioner's failure to satisfy its burden with respect to the operational test. We therefore direct our inquiry accordingly. An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. Sec. 1.501(c)(3)-1(c)(2), Income Tax Regs. The concept of private inurement is to ensure that the organization serves public rather than private interests. Church of Scientology of California v. Commissioner, 83 T.C. 381, 491 (1984), affd. 823 F.2d 1310 (9th Cir. 1987). In a proceeding under section 7428, petitioner bears the burden of proof to establish that respondent's determination was in error. Rule 217(c)(2); Church of Scientology of California v. Commissioner, supra; Basic Bible Church v. Commissioner, 74 T.C. 846, 856 (1980), affd. sub nom. Granzow v. Commissioner, 739 F.2d 265 (7th Cir. 1984). *124 For an organization claiming the benefits of section 501(c)(3) as a religious organization, "tax exemption is a privilege, a matter of grace rather than right". Christian Echoes National Ministry, Inc. v. United States, 470 F.2d 849, 857 (10th Cir. 1972). Under section 1.6033-2(h)(2), Income Tax Regs., an organization which is exempt from tax, whether or not it is required to file an annual information return, shall submit such additional information as may be required by the Internal Revenue Service for the purpose of inquiring into its exempt status. This Court has previously held that where the creators control the affairs of the organization, there is an obvious opportunity for abuse, which necessitates an open and candid disclosure of all facts bearing upon the organization, operations, and finances so that the Court can be assured that by granting the claimed exemption it is not sanctioning an abuse of the revenue laws. Bubbling Well Church of Universal Love, Inc. v. Commissioner, 74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981); see General Conference of the Free Church v. Commissioner, 71 T.C. 920 (1979); *125 Levy Family Tribe Foundation, Inc. v. Commissioner, 69 T.C. 615 (1978). Where such disclosure is not made, the logical inference is that the facts, if disclosed, would show that the taxpayer fails to meet the requirements of section 501(c)(3). Bubbling Well Church of Universal Love, Inc. v. Commissioner, supra.Petitioner leaves us no choice but to draw such an inference in the present case. The record is devoid of documentation or other substantive information regarding petitioner's operations. No financial records and no minutes of meetings held or attended by the board of elders or petitioner's bishops were ever produced. What little information petitioner did provide, pursuant to respondent's written requests, was extremely vague and, in our view, simply an attempt by petitioner to avoid disclosing the requested information. Petitioner has completely failed to establish its entitlement to retain its tax-exempt status. [2]
*126 Petitioner has also failed to properly prosecute its case. Petitioner failed to file a brief, as ordered by the Court and required by Rule 151, or explain its failure to do so. We have previously treated such inaction by a party as an abandonment of those issues not addressed. See Calcutt v. Commissioner, 84 T.C. 716, 721 (1985); Klein v. Commissioner, 6 B.T.A. 617, 623 (1927); Hawkins v. Commissioner, T.C. Memo. 1990-341; Nosek v. Commissioner, T.C. Memo. 1989-622; Bender v. Commissioner, T.C. Memo. 1985-375. We have also held that failure to file a brief may justify the dismissal of all issues as to which the taxpayers have the burden of proof. Stringer v. Commissioner, 84 T.C. 693, 708 (1985), affd. without opinion 789 F.2d 917 (4th Cir. 1986). We sustain respondent's revocation of petitioner's exempt status. Decision will be entered for respondent. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code as in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent offered, as evidence of petitioner's activities, the 1990 convictions of two of petitioner's elders, Mr. Barkley and Mr. White, for conspiracy to obstruct the Internal Revenue Service in its computation, assessment, and collection of Mr. Barkley's Federal income taxes and of four counts of tax evasion in connection with their ULF activities. Each count of the indictment charging Mr. Barkley and Mr. White with tax evasion alleged that they attempted to evade tax by "failing to pay to the Internal Revenue Service said income tax, by assigning his income to the United Libertarian Fellowship, Inc., and by filing * * * false * * * Returns." Kathleen White, one of petitioner's original incorporators, was also convicted on May 8, 1991, of two counts of making a false return of income in violation of sec. 7206(1). Petitioner stipulated to the authenticity of the indictments and verdicts, but nevertheless, objected to their admission. Our disposition of this action based on petitioner's failure to establish its entitlement to tax-exempt status, makes it unnecessary to rely on or make any specific findings with respect to the indictments and convictions.↩