T.C. Memo. 1999-149


UNITED STATES TAX COURT


LARRY D. BOWEN FAMILY FOUND., Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 23088-96X.                Filed May 3, 1999.


William J. Tully (an officer), for petitioner.

<u>Kirk M. Paxson</u>, for respondent.


MEMORANDUM OPINION


LARO, <u>Judge</u>: Petitioner petitioned the Court to declare whether petitioner qualifies for exempt status under section 501(c)(3). See sec. 7428. The parties dispute whether petitioner meets the operational test of section 1.501(c)(3)-1, Income Tax Regs. We hold it does not. Unless otherwise stated, section references are to the applicable versions of the Internal

Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

Background

We decide this case on the basis of the entire administrative record, see Rule 217(b)(1), which is incorporated herein by this reference.  Petitioner's mailing address was in Ontario, California, when its petition was filed.

William J. Tully is a promoter of tax-exempt entities. Larry Don Bowen and his wife Virginia (collectively, the Bowens) attended one of Mr. Tully's seminars and later paid him to form a tax-exempt family foundation for them.  Mr. Tully formed a corporation named "Larry D. Bowen Family Foundation" (the petitioner herein), with five "members", five directors, and four officers.  The corporation's officers are the Bowens, Mr. Tully, and the Bowens' son, Michael Bowen.  The corporation's directors are the same four officers and the Bowens' other son, Larry Albert Bowen.  The corporation's "members" are unidentified.

Mr. Tully filed articles of incorporation and bylaws for petitioner with the Nevada Secretary of State.  The articles state that petitioner's primary purpose is "TO PROVIDE FINANCIAL ASSISTANCE FOR THE NEEDY."  The bylaws state that petitioner's primary purpose is that set forth in the articles.  The bylaws further state that "Nothing herein contained shall be construed

to prevent any Director from receiving compensation for services to the Corporation rendered in a capacity other than Director."

On April 12, 1994, petitioner filed with the Commissioner a Form 1023, Application for Recognition of Exemption Under Section 501(c)(3) of the Internal Revenue Code (Application), in which it sought recognition as a tax-exempt entity.  The Application reported that petitioner's activities were:  (1) Supplying money, goods or services to the poor, (2) providing services for the aged, and (3) providing aid to the handicapped.  The information that petitioner provided to the Commissioner on and with the Application was vague as to the specifics of these activities. The Application stated generally that

> The primary objective of the foundation is to offer
> financial assistance, mostly in the form of actual cash
> and credit, on a professional basis and approach, to
> those people who are in immediate need, such as the
> homeless, the sick, and any other person whose needs
> are temporary in nature, as verses [sic] those who are
> in actual need of longterm financial assistance.

The Application indicated that petitioner had not currently begun any activity, except for organizational activities, and that petitioner was not going to begin operating until after the Commissioner recognized it as tax exempt.  As to sources of financial support, the Application stated,

> At the present time this organization does not have any
> procedure for the generation of income other than * * *

* * * * * * *

(a) Direct donations from the general public at large,

(b) Larger sums from various fund raising activities,

(c) A possible "thrift store" type operation, and

(d) Donations of property (both personal and real) which can be turned into cash, and

(e) Various others as may be recommended and implemented by the organization.

On June 14, 1994, the Commissioner mailed petitioner a letter seeking clarification of the information that it had provided him on and with the Application. The letter was specific as to the information that the Commissioner needed to rule on petitioner's requested exempt status and listed the name and phone number of a person at the Internal Revenue Service to contact with any questions. The letter stated: "We can only recognize you as exempt in advance of operations if you are able to describe your proposed operations in sufficient detail to enable us to determine that you will be organized and operated in accordance with section 501(c)(3) of the Code."

On July 6, 1994, petitioner mailed the Commissioner a response to his letter. The response was vague as to answers to the questions set forth in the Commissioner's letter and did not explain in detail petitioner's proposed activities or operation.

On September 20, 1994, the Commissioner mailed petitioner another letter seeking specificity as to petitioner's organization, activities, and operation.  The letter explained that the Commissioner needed specific information before he could rule that petitioner was exempt from taxation under section 501(c)(3).  The letter, citing and quoting Rev. Proc. 90-27, sec. 5.02, 1990-1 C.B. 514, 515, stated that

> .02 Exempt status will be recognized in advance of operations if proposed operations can be described in sufficient detail to permit a conclusion that the organization will clearly meet the particular requirements of the section under which exemption is claimed.  A mere restatement of purposes or a statement that proposed activities will be in furtherance of such purposes will not satisfy this requirement.  The organization must fully describe the activities in which it expects to engage, including the standards, criteria, procedures or other means adopted or planned for carrying out the activities, the anticipated sources of receipts, and the nature of contemplated expenditures.  Where the organization cannot demonstrate to the satisfaction of the Service that its proposed activities will be exempt, a record of actual operations may be required before a ruling or determination letter will be issued.  * * *

The letter set forth questions as to specific information that the Commissioner needed to rule on petitioner's requested exemption and listed the name and phone number of the person at the Internal Revenue Service to contact with any questions.

By way of an undated letter to the Commissioner, petitioner responded to the Commissioner's letter of September 20, 1994.  This response was no more informative than the prior response as to the specifics of petitioner's organization, activities, or

operation.  The latest response regurgitated many of the same statements as set forth on the prior response.

On December 13, 1994, the Commissioner issued to petitioner a 30-day letter, reflecting the Commissioner's determination that petitioner did not qualify under section 501(c)(3) because it failed the operational test of section 1.501(c)(3)-1(c), Income Tax Regs.  Approximately 1 month later, Mr. Tully, in his capacity as petitioner's vice president, notified the Commissioner that petitioner was appealing that determination, and approximately 6 months after that, Mr. Tully met with one of respondent's Appeals officers to discuss petitioner's case. Shortly after this meeting, petitioner filed with the Commissioner an amended Form 1023.  As amended, petitioner's Form 1023 stated that

> the primary purpose of the foundation, as stated in its oroginal [sic] application for exemption, * * * [was] amended to read as follows:

> "The primary purpose of the foundation will be to raise funds for financially strap families living within the immediate area of the foundation's base of operation with all funds being administered by other IRS approved 501(c)(3) charitable organizations such as the Salvation Army, United Way and the Catholic Church".

> * * * the foundation will limit its currect [sic] fund raising activities to raising funds directly from its officers, directors and their immediate families, friends and business associates.

The amended Form 1023 did not list specifics as to petitioner's operations, including the manner in which petitioner would effect

its amended primary purpose. The amended Form 1023 did not address any safeguards against private inurement.

On April 9, 1996, the Commissioner mailed a letter to Mr. Tully, in his capacity as petitioner's vice president, explaining that petitioner had not yet described its operations in sufficient detail. The letter set forth four groups of information that the Commissioner lacked as to petitioner including a definition of the term "financially strap" as set forth in the amended Form 1023.

By way of an undated letter, Mr. Tully responded to the Commissioner's letter of April 9, 1996. The response was generally vague as to the information sought. As to the definition of the term "financially strap", the letter stated:

> This organization defines the term "financially strap" as a temporary condition wherein the person, or family, under consideration is without "immediate funds in sufficient amount to provide the very necessities of life for the present day, or week, at most".

> It is not to bail out any person or family from their current financial psoition [sic]. Rather, it is a temporary means of relief that is intended to assist that person or family in their immediate need of foods and or lodging for at least a day or two, perhaps a week at the most until they can get on relief or find other assistance, if that be the case.

> It is to make sure that the person or persons in question do not have to go hungry over night or not have a safe place to stay.

> Included in this immediate need might be considered a doctor appointment for life threatening situations.

On July 24, 1996, the Commissioner issued to petitioner a final adverse determination letter.  The letter stated:

Our adverse determination was made for the following reason(s):

> You did not meet the operational test under section 1.501(c)(3)-1 of the Income Tax Regulations.  In order to qualify under Code section 501(c)(3), an organization must be both organized and operated exclusively for one or more purposes specified in that section.  You did not describe your proposed activities in sufficient detail as required by section 1.501(c)(3)-1 of the Regulations.

## Discussion

The Commissioner has determined that petitioner does not meet the requirements of section 501(c)(3).  Petitioner must prove this determination wrong.  See Rule 217(c)(2)(A); Church of Scientology of Cal. v. Commissioner, 83 T.C. 381, 491 (1984), affd. 823 F.2d 1310 (9th Cir. 1987); Church By Mail, Inc. v. Commissioner, 765 F.2d 1387, 1391 (9th Cir. 1985), affg. T.C. Memo. 1984-349.  In order to do so, the administrative record upon which this case is to be decided must contain enough evidence to support a finding contrary to the grounds set forth in the notice of determination, and petitioner must demonstrate the merits of its claim by at least a preponderance of the evidence.  See Estate of Gilford v. Commissioner, 88 T.C. 38, 51 (1987); see also Rule 217(c)(2)(A); Fed. R. Evid. 301.  If petitioner fails its burden, the Commissioner will prevail.  See Rockwell v. Commissioner, 512 F.2d 882, 885 (9th Cir. 1975),

affg. T.C. Memo. 1972-133; <u>American Pipe & Steel Corp. v.</u>
<u>Commissioner</u>, 243 F.2d 125, 126 (9th Cir. 1957), affg. 25 T.C.
351 (1955); <u>Estate of Gilford v. Commissioner</u>, <u>supra</u> at 51.

Section 501 provides:

> (a) Exemption From Taxation.--An organization
> described in subsection (c) * * * shall be exempt from
> taxation under this subtitle unless such exemption is
> denied under section 502 or 503.

>     *     *     *     *     *     *     *

> (c) List of Exempt Organizations.--The following
> organizations are referred to in subsection (a):

>     *     *     *     *     *     *     *

> > (3) Corporations, and any community
> > chest, fund, or foundation, organized and
> > operated exclusively for religious,
> > charitable, scientific, testing for public
> > safety, literary, or educational purposes,
> > * * * no part of the net earnings of which
> > inures to the benefit of any private
> > shareholder or individual, no substantial
> > part of the activities of which is carrying
> > on propaganda, or otherwise attempting, to
> > influence legislation, * * * and which does
> > not participate in, or intervene in * * * any
> > political campaign on behalf of (or in
> > opposition to) any candidate for public
> > office.

From this text, we understand that an organization is entitled to
exempt status if it is organized and operated exclusively for
charitable purposes.  See also sec. 1.501(c)(3)-1(a)(1), Income
Tax Regs.  We also understand that an organization that fails
this test does not qualify for exempt status under section
501(c)(3).  See also <u>id.</u>

Respondent focuses entirely on petitioner's failure to satisfy its burden as to the operational test. So do we. Section 1.501(c)(3)-1(c), Income Tax Regs., provides as follows as to the operational test:

> (c) Operational test.--(1) Primary activities. An organization will be regarded as "operated exclusively" for one or more exempt purposes only if it engages primarily in activities which accomplish one or more of such exempt purposes specified in section 501(c)(3). An organization will not be so regarded if more than an insubstantial part of its activities is not in furtherance of an exempt purpose.

> (2) Distribution of earnings. An organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. * * *

From the text of these regulations, we understand that an organization is not operated exclusively for one or more exempt purposes if its net earnings inure in whole or in part to the benefit of private shareholders or individuals. See sec. 1.501(c)(3)-1(c)(2), Income Tax Regs. The concept of private inurement as expressed therein ensures that the organization serves public rather than private interests. See Church of Scientology of Cal. v. Commissioner, supra at 491. Tax exemption is a matter of legislative grace; it is not a matter of right. See Christian Echoes Natl. Ministry, Inc. v. United States, 470 F.2d 849, 857 (10th Cir. 1972).

We have previously observed that the opportunity for abuse is present when the affairs of an organization are controlled by

its creators.  See <u>Bubbling Well Church of Universal Love, Inc. v. Commissioner</u>, 74 T.C. 531, 535 (1980), affd. 670 F.2d 104 (9th Cir. 1981).  In such a situation, therefore, we require an open and candid disclosure of all facts bearing upon the organization, its operations, and its finances so that we may be assured that we are not sanctioning an abuse of the revenue laws by granting a claimed exemption.  See <u>id.</u>; see also sec. 1.6033-2(h)(2), Income Tax Regs. (an organization that is exempt from tax, whether or not required to file an annual information return, must submit any additional information that the Commissioner requires to inquire into its exempt status).  Where such a disclosure is not made, the logical inference is that the facts, if disclosed, would show that the taxpayer fails to meet the requirements of section 501(c)(3).  See <u>Bubbling Well Church of Universal Love, Inc. v. Commissioner</u>, <u>supra</u> at 535.

Petitioner leaves us no choice but to draw such an inference here.  The record is devoid of sufficient documentation or other substantive information regarding petitioner's organization, activities, or operations.  What little information petitioner did provide, pursuant to respondent's requests, was extremely vague and, in our view, simply an attempt by petitioner to avoid disclosing the requested information.  Petitioner has completely failed to establish its entitlement to receive tax-exempt status.

We also note that petitioner has failed to prosecute properly its case.[1]  Petitioner failed to file a brief, as ordered by the Court and required by Rule 151, and it has failed to explain its failure to do so.  We have previously treated such inaction by a party as an abandonment of those issues not addressed.  See Calcutt v. Commissioner, 84 T.C. 716, 721 (1985).  We also have held that the failure to file a brief may justify the dismissal of all issues as to which a taxpayer has the burden of proof.  See Stringer v. Commissioner, 84 T.C. 693, 708 (1985), affd. without published opinion 789 F.2d 917 (4th Cir. 1986).

We sustain respondent's determination.

Decision will be entered

for respondent.

---

[1] Petitioner's representative, Mr. Tully, is no stranger to litigation.  He has filed cases in this Court on at least 3 prior occasions, see Tully v. Commissioner, Order of this Court dated Jan. 8, 1998, dismissing the case for failure to prosecute, vacated and remanded with unpublished opinion 164 F.3d 631 (9th Cir. 1998), with instructions to dismiss petition for lack of jurisdiction; Tully v. Commissioner, T.C. Memo. 1997-310, on appeal (9th Cir., July 29, 1997); Oliver Family Found. v. Commissioner, T.C. Memo. 1997-220, he has or is prosecuting the appeal of two of these cases before the Court of Appeals for the Ninth Circuit, and he prosecuted one case before a California district court, see Tully v. Kaply, 81 A.F.T.R.2d 98-2125 (C.D. Cal. 1998).